**NEAL H. FLASTER, L.L.C.**
30A Vreeland Road
P.O. Box 21
Florham Park, New Jersey 07932
Tel. No.: 973-822-7900
Attorneys for Plaintiff, Valcom, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALCOM, INC., a corporation of the State of Delaware      : <br> : <br> : <br>    Plaintiff,       : <br> : <br> : <br>v.          : <br> : <br>VINCENT VELLARDITA, TERESA  : <br>VELLARDITA, BRIDGEPORT   : <br>ENTERPRISES, INC., INGRID CLAVIJO, : <br>FRANK O'DONNELL, NALINKANT  : <br>AMRATLAL RATHOD, RAHUL NALIN : <br>RATHOD, JOHN DOE(s) 1-10 (names being : <br>fictitious), JANE DOE(s) 1-10 (names  : <br>being fictitious) and ABC COMPANIES 1-10 : <br>(names being fictitious)     : <br> : <br>    Defendants     : <br> : | Civil Action No.: <br><br><br> **COMPLAINT AND** <br> **JURY DEMAND** |

ValCom, Inc., a corporation of the State of Delaware, with its principal place of business located at 429 Rockaway Valley Road, Boonton Township of New Jersey, by way of Complaint against the Defendants, says:

## STATEMENT OF THE CASE

1.     This case concerns the fraudulent activities of certain Defendants who *inter alia*, intentionally engaged in conduct that was adverse to the interests of the Plaintiff, ValCom, Inc.("ValCom" or "Company") by their self-dealing and recklessness, their wasting of corporate

assets, their engaging in business activities despite being in a conflict of interest with ValCom, their breach of the fiduciary duties of good faith, care and loyalty, their usurping of corporate opportunity for themselves, their fraud, embezzlement, bad faith and breach of the implied duty of good faith and fair dealing, and their negligence.

## JURISDICTION

2.     The United States District Court of the State of New Jersey has jurisdiction pursuant to the Racketeering Influence Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) with the amount in controversy exceeding $75,000.

## VENUE

3.     Venue in the United Stated District Court for the State of New Jersey is proper because a substantial part of property that is the subject of the action is situated in the State of New Jersey.

## THE DEFENDANTS

4.     Defendant Vincent Vellardita ("Vince Vellardita"),  residing at 111 16th Street, Belleair Beach, Florida, was the former Chief Executive Officer ("CEO"), President and Chairman of the Board of Directors ("Chairman") of ValCom until his removal by Order entered on March 30, 2012 from the Court of Chancery of the State of Delaware in the matter entitled *"Silvana Costa Manning and Patrick Willemsen v. Vince Vellardita, Nalin Rathod and Rahul Rathod"*, C.A. 682 VCG.

5.     Defendant Vince Vellardita, while contemporaneously serving as an officer and director of ValCom, was also a Director of Defendant Bridgeport Enterprises, Inc. ("BEI") in 2008

and 2009 and served as a "consultant/ manager" for BEI in public filings with the State of Florida, Division of Worker's Compensation dated May 28, 2009, pursuant to Florida Law, Chapter 440.05(14), F.S. which exempts officers of corporations from having to obtain worker's compensation insurance on themselves: a) in violation of his employment contract with ValCom which restricted outside employment; b) without prior approval from Valcom's Board of Directors ("Board") for obtaining outside employment;  and c) without full and complete disclosure of same to the Board and the Company's Shareholders as a precursor to his taking positions as a Director and Officer of BEI.

6.    Defendant Vince Vellardita knowingly assisted in the formation and operation of a fraudulent enterprise and scheme designed to defraud ValCom out of millions of shares of Company stock and substantial monies from the Company's accounts to the detriment of the Company and its Shareholders, with the assistance of certain agents, servants and employees of ValCom, certain former Directors and Officers of the Company, and other persons and entities, including but not limited to Defendants Teresa Vellardita, BEI, Frank O'Donnell, Ingrid Clavijo, Nalin Rathod, Rahul Rathod, John Does 1-10 (names being fictitious), Jane Does 1-10 (names being fictitious) and ABC Companies 1-10 (names being fictitious).

7.    All allegations set forth herein referring to "Vince Vellardita" refer to Defendant Vince Vellardita individually, as the former CEO, President and Chairman of the Board of Directors ("Chairman") of ValCom and also as a Director and Officer of BEI, unless otherwise stated.

8.    Defendant Teresa Vellardita, residing at 111 16th Street, Belleair Beach, Florida 33786, is the Wife of Defendant Vince Vellardita and at various times beginning in or about June 28, 2007 served as Director, Vice President and Secretary of Defendant BEI while

contemporaneously controlling ValCom's books and records as the Company's bookkeeper.

9.      All allegations below referring to "Teresa Vellardita" refer to Defendant Teresa Vellardita both individually and in her capacity as Director, Vice President and/or Secretary of Defendant BEI and also as the bookkeeper of ValCom, unless otherwise  stated.

10.      Defendant BEI was incorporated in the State of Florida on June 28, 2007, with its principal place of business located at 111 16th Street, Belleair Beach, Florida 33786-3309.

11.      Defendant Frank O'Donnell ("O'Donnell"), a resident of the State of Nevada, is a former Member of the Board of Directors of ValCom, and upon information and belief, a confident of Defendant Vince Vellardita, who knowingly assisted Defendant Vince Vellardita and co-Defendants, Teresa Vellardita,  Ingrid Clavijo, Nalin Rathod, Rahul Rathod, John Does 1-10 (names being fictitious), Jane Does 1-10 (names being fictitious), ABC Companies (names being fictitious) and other persons unknown in the formation and operation of a fraudulent enterprise and scheme to divert business, income, profits and assets to themselves individually or collectively to Defendant BEI and/or others, to ValCom's substantial detriment.

12.      All allegations set forth herein referring to "O'Donnell" refer to Frank O'Donnell individually, and also as a Director of ValCom, unless otherwise stated.

13.      Defendant Ingrid Clavijo ("Clavijo"), a resident of 3135 Windless Court, Tampa, Florida, a former employee of ValCom and upon information and belief, a confidant of the co-defendant, Vince Vellardita who knowingly assisted Defendant Vince Vellardita and co-Defendants Teresa Vellardita,  Frank O'Donnell, Nalin Rathod and Rahul Rathod, John Does (1-10), Jane Does (1-10) and other persons unknown in the formation and operation of a fraudulent enterprise and scheme to divert business, income, profits and assets for financial gain to themselves individually

or collectively and/or to Defendant BEI or others, to ValCom's substantial detriment.

14.     All allegations set forth herein referring to "Clavijo" refer to Ingrid Clavijo, individually and also as an employee at ValCom, unless otherwise stated.

15.     Defendants Nalikant Amratlal Rathod ("Nalin Rathod") and Rahul Nalin Rathod ("Rahul Rathod") are, upon information and belief, confidants and Shareholders of ValCom who purportedly claim to own several million shares in their name and collectively, another fifty (50) million shares of Series A Preferred Stock and fifty (50) million shares of common stock of ValCom through their company, Solomed PTE, Ltd., a claim that Plaintiff disputes.

16.     Upon information and belief, the Rathods also own shares of ValCom through a company known as Asia Pacific Investment Holdings, Ltd. ("Asia Pacific").

17.     All allegations set forth herein referring to Nalin Rathod and/or Rahul Rathod refer to them individually,  as shareholders in ValCom and as the agents of or principals in Solomed PTE, Ltd., unless otherwise stated.

18.     Defendants John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10 (names being fictitious) and ABC Corporations 1-10 (names being fictitious) are such persons or entities, individually or collectively, who knowingly assisted Defendant Vince Vellardita and the co-Defendants, Teresa Vellardita, BEI, Frank O'Donnell, Ingrid Clavijo, Nalin Rathod and Rahul Rathod in the formation and operation of a fraudulent enterprise and scheme to misappropriate Company funds and assets and/or to divert business, income, profits and assets from ValCom to themselves individually or collectively and/or to Defendant BEI or others, to ValCom's substantial detriment.

**BACKGROUND**

19.     Plaintiff ValCom is a diversified, fully integrated, independent entertainment company, whose history dates back to 1983 when Defendant Vince Vellardita first formed Valencia Entertainment International ("Valencia") and thereafter in 1992, when ValCom was incorporated in the State of Delaware. In 2001, Valencia and ValCom merged with SBI Communications, Inc., which changed its name to ValCom, Inc., which operated as a publicly held corporation of the State of Delaware, with Vince Vellardita serving as the Company's President, Chairman of the Board ("Chairman") and CEO.

20.     ValCom for many years, through its operating divisions and subsidiaries, created and operated as a diversified entertainment company, that accommodated film, television and commercial productions through four divisions comprised of television and film production, broadcasting (My Family TV Network), distribution, and live theater. ValCom currently has a library of music, film, and television content available for worldwide distribution.

21.     On August 22, 2011, ValCom's Attending Board of Director Members, dissatisfied with Defendant Vince Vellardita's repeated and intentional failures or refusals to  perform duties consistent with his responsibilities as Chairman, President and CEO, recommended that the Board *inter alia*, remove him from his positions within the Company.

22.     On August 30, 2011, a  special meeting of the Board of Directors of ValCom was called to consider whether to terminate Defendant Vince Vellardita as Chairman, President and CEO of the Company, appoint  Patrick Willemsen in his place, and form a committee to evaluate whether to proceed with litigation against him because of his errors and omissions as an Officer and Director of ValCom.

6

23.   On August 30, 2011, the Board voted to immediately remove Defendant Vince Vellardita as an Officer and Director of the Company, elect Patrick Willemsen to serve as President, CEO and Chairman of the Board of Directors and to form a committee to decide whether to proceed with litigation against Vellardita, as per the above.

24.   Four of the Six ValCom Board Members, Silvana Costa Manning, Tim Harrington, Patrick Willemsen and Michael Vredegoor, signed the Resolution; the remaining two Directors, Defendants Frank O'Donnell and Vince Vellardita failed to vote in accordance with the recommendations of the Attending Board Members.

25.   In response to this Resolution, Defendant Vince Vellardita immediately took action contrary to Delaware law and ValCom's By-Laws to maintain his positions within the Company by attempting to replace the four Board members who voted to remove him and appointing a competing Board, comprised in part with the co-defendants, Nalin Rathod and Rahul Rathod as Directors of the Company.

26.   To facilitate this fraudulent scheme, Defendant Vellardita falsified records to claim that on August 21, 2011, one day prior to his receipt of notice from the Attending Board of Directors members as per the above, the Company's shareholders voted by written consent of a majority of the outstanding voting shares (the "Written Consent") to remove Timothy Harrington, Michael Vredegoor and Silvana Costa Manning as directors of the Company and to fraudulently elect Nalin Rathod and Rahul Rathod as Directors. Upon information and belief, Defendant Vellardita acted with the Rathods' cooperation, assistance and participation.

27.   On August 26, 2011, ValCom Directors, Silvana Costa and Patrick Willemsen, filed suit in the Court of Chancery of the State of Delaware pursuant to 8 Del. C. § 225, in the matter

entitled *Silvana Costa Manning et al v. Vellardita*, C.A. No. 6812-VCG to invalidate the Written

Consent. In connection therewith, they filed a motion for an interim order to maintain the status quo

with respect to the business affairs of the Company, pending final hearing.

28.    On September 28, 2011, the Delaware Court of Chancery entered a "Status Quo

Order" directing that until final adjudication of the lawsuit:

    a.    Valcom's Board of Directors would consist of Vince Vellardita, Frank O'Donnell, Timothy Harrington, Silvana Costa Manning and Michael Vredegoor;

    b.    Vince Vellardita would remain as President, Chairman and CEO of the Company; and

    c.    The Company would take no action outside its ordinary course of business, including the actions enumerated in the Status Quo Order, without the unanimous affirmative vote of the Board of Directors.

29.    On February 29, 2012, the Board concluded that an investigation into Vince

Vellardita's conduct was warranted based *inter alia*, on his:

    a.    Failure to provide certified shareholder lists and transfer records from Continental Stock and Transfer Company for the period beginning September 1, 2010 to date, following his wildly varying, unexplained number of issued shares as he attempted to instigate a shareholder meeting to remove three Members of the Board of Directors of ValCom;

    b.    Failure to call monthly meetings of the Board of Directors of the Company in violation of his commitment to do so at the meeting of the Board in December 2012;

    c.    Instigation of a special meeting of shareholders upon falsified charges against Director Silvana Costa Manning contrary to his prior demand that the Company hold only monthly meetings and not have special meetings;

    d.    Dealings with Joseph Pittera, Esq. over the past 12 months, including (I) all communications by Mr. Vellardita and/or any representative on his or ValCom's behalf and Pittera and (ii) all documentation of Mr. Pittera's alleged role as counsel to ValCom since August 31, 2011;

    e.    Failure and refusal to provide the Company's Board of Directors with financial

information and Profit and Loss Statements with balance sheets on a monthly basis as required pursuant to the December 2011 board meeting;

f.      Failure to file ValCom's 10K for 2011;

g.      Failure to explain the instigation of, reasons for, and existence of a Securities and Exchange Commission ("SEC") inquiry of the Company and all communications between Mr. Vellardita and his or ValCom's agents and the SEC regarding the SEC inquiry;

h.      Actions which caused ValCom stock to be designated as "DTC chill", which prevented the stock from being traded over the counter;

I.      Failure to explain the current status of any and all liens on ValCom's assets;

j.      Use of ValCom assets multiple times as collateral and the number of current UCC filing liens on ValCom's assets;

k.      Failure to explain the current location and status of ValCom's library, the reason the library was moved, whether there was insurance in case of damage or loss, and the potential impact of Defendant Vellardita's actions on ValCom and shareholder value;

l.      Failure to provide the Board of Directors with the final fully executed contract with Luken Communications, Inc., its co-owner in the joint venture known as My Family Television, which documents had not been produced previously by him, despite the Board's prior request for same; and

m.      Mishandling of contracts with entertainer(s) and the ensuing threats and actions against ValCom and its subsidiary as a result.

30.     On the eve of trial in the Delaware Court of Chancery, Defendant Vince Vellardita withdrew his opposition to the Complaint; thereafter, the Delaware Court entered an Order on March 30, 2012 *inter alia*, in favor of the Plaintiffs on the claim that Vince Vellardita was removed by Board Resolution dated August 30, 2011 as the Company's President, CEO and Chairman.

31.     On April 26, 2012, Defendants Vince Vellardita and Frank O'Donnell resigned as members of ValCom's Board of Directors.

32.     In or about April 19, 2012, ValCom's financial records were moved from the

9

Company's former offices in Florida to Boonton Township, New Jersey in closer proximity to Timothy Harrington, ValCom's new Chief Executive Officer and Company director, Silvana Costa Manning, who reside in New Jersey.

33.     Thereafter, the Board undertook an extensive review of documents that Defendant Vince Vellardita, together with the co-defendant, Teresa Vellardita had kept hidden to mislead the Board as to his conduct.

34.     In the course of its investigation, the Board discovered that Defendant Vince Vellardita *inter alia*:

a.     Engaged for years in activities adverse to ValCom's interests, by issuing stock in the Company's name that he claimed was approved by Board Resolution that was untrue, because there was no lawful quorum;

b.     Mislead the Board as to the purpose of same when he obtained approval for stock to be issued to settle his personal obligations owed to third parties in the absence of full disclosure to the Board and Shareholders;

c.     Engaged in self dealing under circumstances where he had a conflict of interest that disqualified him as an Officer of the Company and as a Board member from voting on resolutions approving the issuance of shares in Company stock;

d.     Breached the fiduciary duty of loyalty and care that he owed the Company as its President, CEO and Chairman of the Board of Directors by his actions; and

e.     Usurped corporate opportunities for himself or for the benefit of the co-defendants, Teresa Vellardita, Bridgeport Enterprises, Inc., Frank O'Donnell, Ingrid Clavijo, Nalin Rathod, Rahul Rathod, John Does 1-10 (names being fictitious), Jane Does 1-10 (names being fictitious) and ABC Corporations 1-10 (names being fictitious) and others without making full disclosure to the Board or its shareholders of his actions and consent for same;

f.     Unilaterally and unlawfully issued shares of Company stock, including at least 131 million shares having been issued since the quarter ending June 30, 2011 without the knowledge and consent of the Board;

g.     Unilaterally and without the Board's consent entered into a loan transaction with

10

Solomed PTE Ltd., thereby pledging 50 million shares as ValCom Series A Preferred stock and 50 million shares of ValCom common stock as collateral, which was not authorized by the Company's Board or its Shareholders;

h.   Conspired with the Rathod Defendants to backdate and execute Loan Documents and unlawfully authorize 50 million Series A Preferred shares to attempt to take control of the Board of Directors of ValCom and circumvent lawful actions taken by the ValCom Board, all to the detriment of the Company's shareholders;

I.   Unilaterally and without consent of the Board issued to the Rathods an additional 16 million shares of ValCom stock, then worth over $1 million dollars during court ordered status quo which prohibited such actions without unanimous consent of the Board;

j.   Signed guarantees for the Solomed loan using assets of ValCom's subsidiary Valencia without Board approval or the approval of Valencia's executive management team;

k.   Drew additional funds from the Solomed loan, totaling $350,000 without receiving Board approval for same;

l.   Wrote off $435,000 of the Company's alleged bad debts, without notice to and consent of the Board;

m.   Failed to account for $3 million paid in capital and from whom it was received;

n.   Failed to account for $1.6 million in SGA expenses from December 2010;

o.   In August 2011, immediately preceding the unlawful consent vote with Solomed, exercised warrants on five million shares of ValCom stock with a par value of $.001 per share, which were not accounted for in ValCom's public filings;

p.   Issued to himself, without notice to the Board or Shareholders of the Company approximately 12 millions shares of Company stock without Board approval and upon information and belief, falsified documents obtain same;

q.   Conspired together with Defendant Teresa Vellardita, on March 30, 2012, the date the Chancery Court in Delaware ordered Vince Vellardita's removal as President and CEO, to have former Company Director Ron Foster execute a document labeled "Promissory Note Compensation payable in Lump Sum and Secured by Interest in Stock" backdated for years 2001 and 2002;

r.   Formed, held interests in or was employed as an officer or director of numerous

11

businesses contrary to the restrictions on same set forth in his employment agreement and ValCom's By-Laws, including but not limited to Video Production Management Services, Inc., a Florida corporation, and Bridgeport Enterprises, Inc., a Florida Corporation and Property Max Holdings, Inc., a Florida Corporation; and

s.      Billed to the ValCom, the legal fees he incurred in connection with his unsuccessful efforts to remove the duly elected directors of the Company in 2012 and retain his positions as President, CEO and Chairman of the Board of Directors of ValCom.

35.      In addition to the above, the Board discovered other improprieties by Defendant Vince Vellardita in his operation and management of ValCom, including but not limited to the following acts:

**A.      Defendant Vincent Vellardita's undisclosed Loan Agreement with Ayuda Equity Funding, LLC, secured by ValCom stock.**

36.      On September 26, 2011, Defendant Vince Vellardita, individually executed a $20,000 Secured Promissory Note ("Promissory Note") with Ayuda Equity Funding, LLC ("Ayuda" or "Lender") located at 135 Kinnelon Road, Kinnelon, New Jersey, with accrued per annum interest of 18%, to be paid in full within 90 days or by December 26, 2011.

37.      At the same time, Vellardita entered into a Pledge and Security Agreement ("Security Agreement") with Ayuda, acknowledging that *"... to induce Secured Party [Ayuda] to make the Loan, [Vellardita] [sic] agreed to grant a continuing lien on the Collateral [consisting of 2,800,000 shares of ValCom common stock]...to secure the repayment of the Loan and the Obligations as defined [therein]."*

38.      The Collateral, as defined in the Security Agreement, Exhibit A, was *"...all of [Vellardita's] right title and interest, whether now existing or hereafter arising or acquired in...2,800,000 common shares of ValCom, Inc. which has been delivered to Secured Party"*. Upon information and belief, Vellardita improperly issued 2,800,000 shares of ValCom stock in his name

in 2010 without approval of ValCom's Board of Directors and used these shares to collateralize his personal loan with Ayuda, thereby encumbering ValCom with the obligation to pay his personal debts and liabilities through the issuance of shares of Company stock.

39.     Pursuant to the terms of the Security Agreement, on September 26, 2011, Vellardita delivered 2,800,000 shares of ValCom stock memorialized by certificate number VC1693 to its stock transfer agent, Continental Stock Transfer & Trust Company ("Continental") as collateral for the loan because the Lender would not fund the loan without proof of delivery of a letter of instruction and Continental's acceptance of same.

40.     Thereafter, Defendant Vince Vellardita defaulted in payment on the Promissory Note, failing and/or refusing to tender repayment of his financial obligations to Ayuda in accordance with his agreement to pay.

41.     On June 5, 2012, Ayuda sought to enforce its rights as a secured party in the Collateral by demanding release of the 2,800,000 shares of stock with the restrictive language removed.

42.     Upon information and belief, Ayuda did not receive Company stock from Continental and Vellardita never repaid the loan.

43.     Defendant Vince Vellardita's issuance of 2,800,000 shares of stock in the Company in his name, which he subsequently used as collateral to obtain a personal loan from Ayuda was fraudulent, used solely to further his personal agenda, was neither authorized or approved by the Board and was adverse to the Company's interests.

**B.** **The "*Ira J. Gaines v. Vincent Vellardita and Teresa Vellardita*" lawsuit.**

44.     On June 18, 2010, Ira J. Gaines ("Gaines") filed suit in the Superior Court of the State

of Arizona, County of Maricopa in the matter entitled, *Ira J. Gaines v. Vincent Vellardita and Teresa Vellardita,* CDE2010-020018, alleging that Defendant Vince Vellardita, individually, fraudulently induced him to loan monies to ValCom. Gains also plead in the alternative that Vellardita made negligent misrepresentations as to the Company's financial status at the time that he loaned ValCom the money and that Vellardita was liable to him in damages, on the basis of promissory estoppel.

45.    In Count One of the Complaint, entitled "Fraud in the Inducement", Gaines alleged that:

a.    Vellardita misrepresented that Valcom's Chapter 11 Petition for Reorganization filed in the United States Bankruptcy Court for the Central District of California, Case No. 2:07-bk-15984-ER filed on July 16, 2007, where the Company's Second Amended Plan of Reorganization was confirmed on August 5, 2008, was "over" to induce him to loan ValCom $108,000, which statement was false when made; and

b.    Vellardita, as the Company's CEO, authorized the content of the Form 10-Q that ValCom filed for the fiscal quarter ending June 30, 2008, falsely stating as fact that "[d]uring August 2008, the Company emerged from bankruptcy", with the knowledge that he would rely on that statement in loaning the Company money.

46.    In Count Two of the Complaint, entitled "Negligent-Misrepresentation", Gaines alleged that:

a.    Vellardita supplied false information in misrepresenting that the ValCom Bankruptcy was "over" when it was not;

b.    Vellardita directed and authorized ValCom to file a 10-Q with the Securities and Exchange Commission stating that during August 2008, the Company emerged from Bankruptcy, which was false; and

c.    To the extent that Vellardita did not intend to mislead plaintiff in making these misrepresentations, he failed to exercise reasonable care or competence in obtaining information as to the status of the ValCom Bankruptcy and by communicating that misinformation to Gaines, he was liable for Gaines' pecuniary losses induced by Vellardita's misrepresentations.

47.    In Count Three of the Complaint, entitled "Promissory Estoppel", Gaines alleged that

Vellardita's representations constituted promises, under circumstances where it would be reasonably foreseeable that he would rely on same, and in reliance on these promises, he committed to loaning the Company $108,000, based on representations which he subsequently discovered were untrue when made.

48.     After receiving notice of the filing of the lawsuit, Defendants Vince Vellardita, individually and his Wife, Teresa Vellardita in October 2010 entered into a Settlement Agreement ("Agreement") without approval or authorization from the Company's Board, in which they acknowledged that: a) the original amount of the debt had almost doubled to "roughly $200,000"; b) ValCom would repay the debt to Gaines without interest; and c) in the event of default, the Company would pay 18% in interest charges annually in repayment until the default was cured.

49.     Although the Gaines' complaint was directed solely against Defendant Vince Vellardita, individually and his Wife, Teresa Vellardita, Vince Vellardita committed ValCom, without approval or authorization by its Board of Directors, to issue Four Million (4,000,000) shares of stock to Gaines without restrictions, based on a share value priced at $.05/share, which was worth approximately $200,000.

50.     To defend the Gaines' lawsuit, Defendant Vince Vellardita retained the services of the Parker Law Firm of Phoenix, Arizona, incurring legal bills of at least $6,389.84, which he authorized the Company to pay without providing notice of the specifics of the Complaint's allegations to ValCom's Board of Directors.

51.     Upon information and belief, the Vellarditas had defenses to the Complaint which they could have asserted as to allegations relating to debt allegedly owed by ValCom because Gaines failed to file a proof of claim in ValCom's pending bankruptcy case, which defenses were known

to the Vellardita and their attorney, the Parker Law Firm based on the attorney's billing records.

52.     The Agreement executed by Defendant Vince Vellardita on ValCom's behalf in response to a lawsuit in which ValCom was not named as a party where Gaines failed to file a proof of claim in the Bankruptcy Court against ValCom, resulting in the Company being compelled to issue stock to satisfy Gaines' damage claims and pay Vellardita's personal legal bills, constituted a breach of Vince Vellardita's fiduciary duty of good faith, care and loyalty to ValCom and was adverse to the interests of the Company

**C**.     The ***"Troutman Sanders, LLP v. Vince Vellardita, Teresa Vellardita, Richard H. Shinataku and ICAG, Inc."* lawsuit.**

53.     On May 27, 2010, a lawsuit was filed by the Law Firm of Troutman Sanders, LLP in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 10-8111-CI-19 in the matter entitled *Troutman Sanders, LLP v. Vince Vellardita, Teresa Vellardita, Richard H. Shinataku and ICAG, Inc*.

54.     Judgment was entered in favor of Troutman Sanders against Defendant Vince Vellardita and his Wife, Teresa Vellardita with the Florida Secretary of State on January 20, 2011 in the amount of $119,181.08 with interest calculated at the rate of 6% annually.

55.     Subsequently, Defendant Vince Vellardita settled the judgment pursuant to a written agreement with Troutman Sanders on August 5, 2011 ("Agreement II"), in which Vince and Teresa Vellardita personally agreed to pay $40,000 in periodic payments to the plaintiff in satisfaction of the judgment.

56.     By the terms of Agreement II, Troutman Sanders consented to forbear executing on the Judgment provided that the Vellarditas complied with its terms; however, if the Vellarditas

16

defaulted in payment, the settlement would be considered *void ab initio* and Troutman Sanders would be free to execute on the Judgment and pursue its remedies against the Vellarditas.

57.    Although the Agreement contemplated that the Vellarditas would pay this liability from personal funds, Defendants Vince Vellardita and his Wife, Teresa, ValCom's bookkeeper, reimbursed themselves from the Company's bank account by fraudulently issuing invoices to ValCom demanding payment.

58.    Specifically, the Vellarditas fraudulently issued invoices to ValCom with the notations, *"billed to: ValCom, Inc."* to be *"shipped to Vince Vellardita, 111 16th Street, Belleair Beach, Florida 33786",* with the description *"Company Charges Made On Personal Credit, 11/10/11 Legal Fee, Troutman Sanders"*, as set forth below:

a.    Check Number 303 dated August 10, 2011 in the amount of $10,000 designated as "reimbursables" to Teresa Vellardita, marked as "Troutman Sanders, Settlement payment 1 of 4", "Account 1-660.1, Professional Fees; Legal Fees."

b.    Invoice dated September 10, 2011, Check Number 305 in the amount of $10,000 to cover wire transfer reference number 20110906-00013670 issued from a bank account in the name of "Teresa Vellardita or Vince Vellardita POD", 111 16th St., Belleair Beach, Florida 33786-3309 on September 6, 2011;

c.    Invoice dated October 7, 2011, Check Number 307 in the amount of $10,000 to cover wire transfer reference number 20111006-00011087 issued from a bank account in the name of "Teresa Vellardita or Vince Vellardita POD", 111 16th St., Belleair Beach, Florida 33786-3309 on October 6, 2011; and

d.    Invoice dated November 11, 2011, Check Number 311 in the amount of $10,000 to cover wire transfer reference number 20111110-00004162 issued from a bank account in the name of "Teresa Vellardita or Vince Vellardita POD", 111 16th St., Belleair Beach, Florida 33786-3309 on November 10, 2011 for a total of at least $30,000 in payments being made by ValCom to cover the Vellarditas personal liabilities under the Agreement.

59.    Defendants Vince Vellardita and Teresa Vellardita's use of ValCom's assets to

reimburse themselves for payments made pursuant to a settlement agreement reached following entry

of a judgment against them in their individual capacities was fraudulent, was not authorized or

approved by the Board and was adverse to the interests of the Company.

**D.   Actions undertaken by the Board of Directors at the direction of Defendant Vellardita in violation of the By-Laws of the Company implicated Vellardita's breach of his fiduciary duties of good faith, loyalty and care, fraud, overreaching and waste of company assets.**

60.   Article II, Section 1(d) of ValCom's By-Laws state that:

[A] director shall perform his or her duties as a director, including his or her duties as
a member of any committee of the Board upon which he may serve, in good faith, in
a manner he or she reasonably believes to be in the best interests of the Corporation,
and with such care as an ordinary prudent person in a like position would use under
similar circumstances.

61.   Article II, Section 1(e) of ValCom's By-Laws state that a director shall not be

considered to be acting in good faith in accordance with the provisions of Article II, Section 1(f)

if he or she has knowledge concerning the matter in question that would cause reliance as described

in Section 1(e) of the By-Laws to be unwarranted.

62.   Article II, Section 4(a) of ValCom's By-Laws state that a majority of the directors

fixed in the manner provided therein shall constitute a quorum for the transaction of business at any

meeting.

63.   Article II, Section 4(b) of ValCom's By-Laws state that a majority of the members

of an Executive Committee or other committee shall constitute a quorum for the transaction of

business at any meeting of such Executive Committee or other committee.

64.   Article III, Section 4[c] of ValCom's By-Laws state that the act of a majority of the

directors present at a Board meeting at which a quorum is present shall be the act of the Board of

Directors.

65.    There were four members of the Board of Directors in 2010, continuing through to the shareholders meeting in May 2011; therefore, a quorum of at least three disinterested Board members was required to transact Company business pursuant to the Company's By-Laws. Following the meeting of May 2011, because six persons were named to the Board, four disinterested persons were required to establish a quorum by the Company's By-Laws to transact business.

1.    **Corporate Resolution of ValCom's Board of Directors dated July14, 2011.**

66.    Defendant Vince Vellardita issued a Corporate Resolution in the name of ValCom's Board of Directors on July 14, 2011, pursuant to a Special Meeting of the Board of Directors purportedly held on that date and at his request, wherein he fraudulently represented that *"...no less than two directors were present and voting throughout."*

67.    In the Resolution purportedly approved by the Board on that date, Defendant Vince Vellardita represented that the Company deemed it to be in its "best interests" to enter into a Securities Purchase Agreement for the issuance of a 8% convertible note in the aggregate principal amount of $60,000 and a stock warrant to permit the purchase of an aggregate of 750,000 shares of Company stock. These shares would be convertible or exercisable into shares of common stock with a par value $0.001 per share on terms subject to the limitations and conditions set forth in the Note and Warrant, together with an irrevocable letter agreement with Continental requiring it to reserve sufficient shares of ValCom stock to be issued upon conversion of the Note or exercise of the Warrant.

68.    In the Resolution of July 14, 2011, Defendant Ingrid Clavijo fraudulently signed her

19

name as a director of the Company, certifying that she and the co-Defendant, Vince Vellardita *"...are members of the Board of Directors of the Corporation"*, which representation was false as Clavijo was not, nor had she ever been, a Director of ValCom and therefore, did not have the right or privilege to vote as a Director of the Company pursuant to its By-Laws and the laws of the State of Delaware, the state of the Company's incorporation; rather, Defendant Clavijo was at all times therein, an employee of ValCom and Defendant Vince Vellardita's administrative assistant.

69.     In the absence of three directors present at the meeting of July 14, 2011, there was no quorum as required by the Company's By-Laws and therefore, the Resolution of July 14, 2011 authorizing the Company to enter into a certain Securities Purchase Agreement was invalid. The manner by which the Resolution was issued implicated *inter alia*, fraud, overreaching and/or waste of corporate assets by Defendant Vince Vellardita, who upon information and belief, issued this Resolution to obtain funds for his personal use and Clavijo, who assisted him in committing this fraudulent act.

**2.     Corporate Resolution of ValCom's Board of Directors dated November 21, 2011.**

70.     Defendant Vince Vellardita issued a Corporate Resolution in the Board's name  on November 21, 2011, pursuant to a Special Meeting of the ValCom Board of Directors purportedly held at his request, wherein he represented that *"...no less than two directors were present and voting throughout",* which claim was false.

71.     Pursuant to the Board's Resolution on that date, it was in ValCom's interests to enter into a Securities Purchase Agreement dated November 21, 2011 in connection with the issuance of a 8% convertible note of the Company in the aggregate principal amount of $75,000. The note was

convertible or exercisable into shares of common stock of the Company, par value $0.001 per share, together with an irrevocable letter agreement with Continental, requiring it to reserve sufficient shares of common stock  to be issued upon conversion of the Note or exercise of the Warrant.

72.     In the Resolution, Defendants Vince Vellardita and Clavijo fraudulently certified that the persons signing same *"...[were] members of the Board of Directors of the Corporation"*, which statement was false as Defendant Clavijo was not, nor had she ever been, a director of ValCom and therefore, did not have the right or privilege to vote as a Director of the Company pursuant to its By-Laws and the laws of the State of Delaware, the state of the Company's incorporation; rather, Clavijo was at all times therein, an employee of ValCom and Vince Vellardita's administrative assistant.

73.     In the absence of a quorum, consisting of a majority of the Members of the Board of Directors as required by the Company's By-Laws, the Resolution of November 21, 2011 was invalid. The manner in which the Resolution was issued implicated fraud, overreaching and/or waste of corporate assets by Defendant Vince Vellardita who issued the Resolution to obtain funds for his personal use and Clavijo, who assisted him in committing this fraudulent act.

74.     Defendant Vince Vellardita's conduct in connection with the Resolution of November 21, 2011 was undertaken in violation of the Status Quo Order issued from the Chancery Court in Delaware on September 28, 2011, which required the unanimous vote by the Board of Directors for the issuance of same.

**E.     Defendant Teresa Vellardita, as ValCom's bookkeeper, wired commissions from the Company's business account to Vince Vellardita by way of an account in the name of Bridgeport Enterprises, Inc. without authorization or approval by ValCom's Board of Directors.**

75.     After regular business hours on February 16, 2011 at 5:40 p.m., Defendant Teresa Vellardita, ValCom's bookkeeper, sent her Husband, the co-Defendant, Vince Vellardita an email with the Subject Heading, "Vince Vellardita Wire Instructions", with Attachments described as "BEI Wire Instructions.doc".

76.     The email contained the instructions, *"[p]lease wire Vince Vellardita's commission to his account named Bridgeport Enterprises. The account wiring information is attached. Thank you."* is signed *"Regards, Teresa Vellardita, Accounting, ValCom, Inc., 2113A Gulf Boulevard, Indian Rocks Beach, FL 33785"* and contained the logo, "my family tv", with an email attachment containing the following instructions:

RE: VINCE VELLARDITA
PLEASE FUND TO THE BELOW ACCOUNT.

Wire Instructions: Funds to be wired to:

Bridgeport Enterprises, Inc., Checking Account

Account Name: Bridgeport Enterprises, Inc.
Bank: Suntrust Bank
City and State: Belleair Bluffs, Florida
Routing #:****0104
Account#:****3491

77.     Defendant Teresa Vellardita's wiring of funds from ValCom's business account to a bank account in the name of BEI, was fraudulent, undertaken at the direction of Defendant Vince Vellardita, was not authorized by the Board of Directors of the Company and was adverse to the Company's interests.

**F**.     **In a resolution dated May 20, 2011, by purported unanimous written consent of ValCom's Board of Directors to an "Action taken without a Meeting", shares of the Company's stock were issued to satisfy an alleged debt of $22,500 in the absence of a Board quorum authorizing same as required by ValCom's By-**

**Laws, with the shares being fraudulently issued to Bridgeport Enterprises Inc.**

78.     On May 20, 2011, Defendant Vince Vellardita issued a resolution purportedly from the Company's Board of Directors, with just two directors present, Frank O'Donnell and Vince Vellardita, stating that *"[t]he undersigned, being all of the directors of Valcom, Inc., a Delaware corporation [sic] acting pursuant to the Delaware Revised Statutes, hereby waive all notice of the time, place and purposes of a meeting of the Board of Directors of the Corporation and hereby unanimously consent and agree to the adoption of the following resolutions...".*

79.     As there was no quorum present at the meeting, by which three out of four members were present, the Resolution issued on May 20, 2011, which contained the signature lines of only Defendant Vince Vellardita and Defendant Frank O'Donnell, was invalid.

80.     Pursuant to the May 20, 2011 (purported) Resolution:

a.      Asher Enterprises, Inc. ("Asher") acquired $22,500 of debt from Bridgeport Enterprises on May 20, 2011;

b.      ValCom's Board had been presented with a proposal to authorize the issuance of shares of Company stock in exchange for partial relief of the debt of up to $22,500, representing the amount of the debt in issue; and

c.      The Board (consisting of Defendants Vince Vellardita and Frank O'Donnell) authorized and approved the issuance of shares of the Company's common stock to Asher of up to $22,500 on receipt of the notice of conversions from Asher.

81.     Since Defendant Vince Vellardita was prohibited from voting in favor of the Resolution because of a conflict of interest arising as a result of his interest in BEI, he was not permitted under the Company's By-Laws to vote on the Resolution. As this left Director Defendant Frank O'Donnell present there was no quorum as required by the Company's By-Laws and therefore, the Resolution issued by the Board on May 20, 2011 was invalid.

82.    The transactions undertaken by Defendants Vince Vellardita and Frank O'Donnell in connection with the Board "meeting" of May 20, 2011 violated the Company's By-Laws, was fraudulent and implicated Defendants in theft of Company monies, involving bad faith, self-dealing and waste of ValCom's assets.

**G.    The actions undertaken by Defendant Vince Vellardita, Teresa Vellardita and others to borrow monies in ValCom's name secured by stock in the Company, while disbursing the proceeds of loan(s) to BEI was fraudulent and resulted in the lender(s) receiving a windfall to ValCom's substantial financial detriment.**

**1.    War Chest Capital Multi-Strategy Fund**

83.    In or about April 29, 2011, Defendant Vince Vellardita entered into an agreement with War Chest Capital Multi-Strategy Fund ("War Chest") on ValCom's behalf to execute a Convertible Promissory Note dated April 27, 2011 in the principal amount of $13,000.00, with instructions to Continental, the Company's transfer agent, to reserve 2,363,636 shares of the Company's common stock to be issued on full conversion of the Note, in accordance with its terms.

**2.    Barclay Lyons, LLC**

84.    On the same date that ValCom entered into the agreement with War Chest, ValCom entered into an agreement with Barclay Lyons, LLC ("Barclay") to execute a Convertible Promissory Note dated April 27, 2011 in the principal amount of $12,000, with instructions given to Continental to reserve 2,181,818 of the common shares of the Company to be issued on full conversion of the Note, in accordance with its terms.

85.    Thereafter, Defendants Vellardita and Teresa Vellardita fraudulently arranged for a wire transfer of $25,000, which monies represented the sum total of the War Chest and Barclay loans, from ValCom's business account to BEI, an entity owned and/or controlled by these

24

defendants, by intentionally and falsely mischaracterizing BEI as a "vendor" of ValCom, with the monies funneled through the attorney bank account of Joseph L. Pittera, Esq., of Torrence, California, who took a $5,000 fee for his "services".

86.     On January 19, 2012, Barclay converted 901,715 shares of ValCom stock out of a total of 2,181,818 shares reserved for the loan, with principal and interest totaling $13,525.73 at the then market value of $.0400 a share. Barclay received approximately $36,068 from the sale of the stock with a windfall rate of return of approximately 166% on an annualized basis.

**3.     Black Mountain Equities**

87.     On May 27, 2011, BEI and Black Mountain Equities ("Black Mountain") executed a Securities Purchase Agreement, whereby Black Mountain purchased from BEI a Promissory Note allegedly issued by ValCom to BEI on March 19, 2010 in the principal amount of $24,750.

88.     On May 27, 2011, Black Mountain and ValCom executed an Exchange Agreement whereby Black Mountain exchanged the Promissory Note for a Convertible Note in the amount of $25,000, without notice to and approval by the Company's Board of Directors.

89.     Four days later, on May 31, 2011, notice of Black Mountain's desire to convert the $25,000 Convertible Promissory Note based on a conversion price of $.03 per share of ValCom stock was made, requesting that 833,333 shares of common stock of ValCom be released by Continental, free of any restrictions.

90.     Subsequently, on August 10, 2011, Defendant Teresa Vellardita faxed an instruction letter from Defendant Vince Vellardita to Continental authorizing the immediate release of 1,150,000 shares of common stock of ValCom to Black Mountain based on an Opinion Letter from Brian R. Reiss, Esq., an attorney located in Huntington Beach, California, which stated that:

a.    Black Mountain had acquired the shares to be sold in a transaction not registered under the Securities and Exchange Act, with the shares stemming from a Convertible Promissory Note issued by ValCom to BEI on March 3, 2010. BEI then sold the note to Black Mountain via a Securities Purchase Agreement dated July 19, 2011;

b.    The Convertible Promissory Note was exchanged for a Note via an Exchange Agreement dated July 19, 2011 with a new Convertible Note received July 19, 2011 from the Company and that the conversion demand dated August 9, 2011 for 1,150,000 shares of common stock of ValCom would satisfy the note and leave a zero balance.

c.    Black Mountain is deemed to have owned the shares to be issued since March 3, 2010 and thus, was the beneficial owner for a period of at least six months per Rule 144(d)(1)(I) as BEI was at not characterized as an affiliate of ValCom.

d.    Based on Black Mountain's representations and his own investigation, Mr. Reiss was of the opinion that the issuance and sale of these shares were exempt from the registration requirements of the Securities Exchange Act by reason of and as provisioned by, the exemptions contained under Rule 144, as amended February 15, 2008, with no violation of the law occurring because of the issuance and sale of these securities under Rule 144.

91.    In yet another transaction involving Black Mountain, on August 29, 2011, Defendant Vince Vellardita communicated in writing with Scottsdale Capital Advisors Corp., of Scottsdale, Arizona, certifying that Black Mountain acquired the security from BEI, the seller of same, in a private transaction pursuant to the Securities Purchase Agreement and Exchange Agreements dated August 11, 2010, stating that:

a.    The Security in question was validly issued, with no adverse claims pertaining to the Security, with the debt represented by the Note being lawfully incurred for valuable consideration received and reflected in the Company's financials as a liability as of March 8, 2010; and

b.    Neither Black Mountain nor BEI is or was 90 days prior to the sale, a director, officer or an "affiliate" of the Company as that term is used in paragraph (a) of Rule 144 of the Securities Act of 1933 (i.e., a person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under the control of the Company.

92.     Defendant Vince Vellardita's representations to Scottsdale Capital Advisors Corp. were fraudulent, as he failed to inform the company that BEI was owned by his Wife, Teresa Vellardita, that he was an officer and/or consultant to BEI, a director or former director of BEI and that he controlled BEI directly or indirectly through Teresa Vellardita, with the intent that his representations would be relied on by others for the purpose of effectuating the aforesaid loan transactions so that he could obtain a personal benefit adverse to the Company's interests.

93.     The actions by Defendant Vincent Vellardita as set forth herein, violated the fiduciary duties of good faith, loyalty and care that he owed the Company as an officer and director.

94.     The actions by Defendant Teresa Vellardita as set forth herein, violated the fiduciary duties of good faith, loyalty and care that she owed the Company as a high ranking managerial agent and the duty of loyalty that she owed the Company as an employee.

**H.      Defendant Vince Vellardita, through the Defendant Teresa Vellardita directed that payments be made to Bridgeport Enterprises, Inc., as a vendor, for alleged "consulting work" that was neither approved nor authorized by ValCom's Board of Directors.**

95.     Defendant Vince Vellardita, through Defendant Teresa Vellardita, the Company's bookkeeper, fraudulently issued numerous checks from ValCom's operating account to BEI that were falsely characterized as payments for "consulting" work, without authorization and approval of the Company's Board of Directors.

96.     The Company's investigation of Defendants' actions disclosed the following:

a.      Check No. 2121 dated March 18, 2011 in the amount of $5,000 payable to the order of BEI, referring to a Journal entry #159 dated September 30, 2009 for the "[p]ayperiod 7/15-7-31/2009".

b.      Check No. 2125 dated April 4, 2011 in the amount of $5,000 payable to the order of BEI, referring to a Journal entry #159 dated September 30, 2009, for the "[p]ay

period August 1-August 14, 2009".

c.     Check No. 2132 dated April 18, 2011 in the amount of $5,000 payable to the order of BEI ("vendor"), referring to Professional Fees provided between April 15 and April 30, 2001.

e.     Journal Entry dated May 4, 2011, acknowledging that a credit was applied to BEI in the amount of $27,500, based on a wire transfer of $25,000 from the Law Offices of Joseph Pittera, Esq., to BEI between September 1 and October 31, 2009, with deductions for wire fee, loan documentation fees and legal fees paid to Mr. Pittera.

f.     Check No. 2167 dated May 15, 2011 payable to BEI in the amount of $5,000 relating to "Bill# 5/1-5/14/11".

g.     Journal Entry dated May 23, 2011 applicable to BEI, with a credit in the amount of $24,750 for "debt acquisition with Asher dated 5/20/211".

h.     Check #1502 dated June 1, 2011 payable to BEI in the amount of $5,000, reference number 5/15-5/31/11, bill dated 5/31/2011 marked as payment for "Professional Fees: Consulting".

I.     Bill payment 1522 dated June 15, 2011, applied to BEI in the amount of $5,000, Ref# 6/1-6/14/11 marked as bill for "Professional Fees: Consulting".

j.     Journal entry dated June 22, 2011 applicable to BEI with credit in the amount of $18,000 for "debt paid by stock issued under...Bridgeport Enterprises".

k.     Bill payment 1543 dated July 5, 2011, applicable to BEI in the amount of $5,000, Ref# 6/15-6/30/11, marked as bill for "Professional Fees: Consulting".

l.     Journal Entry dated July 6, 2011 applicable to BEI, with credit in the amount of $22,470 for "Wire transfer from Law Offices of Joseph Pittera, Esq.", payable to Bridgeport Enterprises, Inc.

m.     Bill payment 1549 dated July 15, 2011, applicable to BEI in the amount of $5,000, marked as bill for "Professional Fees: Consulting".

n.     Journal entry dated July 26, 2011 applicable to BEI in the amount of $45,000, "Recorded to show debt paid by stock issued ..." to Bridgeport Enterprises, Inc.

o.     Journal entry dated August 11, 2011 applicable to BEI in the amount of $24,000, "Recorded to show debt paid by stock issued..." to Bridgeport Enterprises."

p.  Journal entry dated July 27, 2011 applicable to Bridgeport Enterprises, Inc. in the amount of $34,500, "Recorded to show debt paid by stock issued..." to Bridgeport Enterprises.

q.  The total of payments to BEI from ValCom beginning October 24, 2007, less than four months after BEI was incorporated on June 28, 2007, through July 14, 2011, a period of approximately three years and nine months, for alleged "consulting" services was $195,971.23, none of which was approved or authorized by the Board of Directors of ValCom.

r.  The financial records of ValCom further reflect that effective September 15, 2008 that $86,000 was due to Defendant Vince Vellardita for "unpaid consulting fees", none of which was approved or authorized by the Board of Directors of ValCom.

97.  The aforesaid payments by Defendants Vince and Teresa Vellardita constituted *inter alia*, fraud, civil theft and embezzlement and were adverse to the Company's interests.

**I.**  **The *"Greystone Capital Partners, Inc. v. Vince Vellardita et al"* Law Suit.**

98.  In or about June 24, 2011, Greystone Capital Partners, Inc. ("Greystone") filed suit in the Supreme Court of the State of New York, County of New York against Vince Vellardita, individually, Continental Stock Transfer & Trust Co. and ValCom in the matter captioned, *Greystone Capital Partners, Inc. v. Vincent Vellardita, individually, Continental Stock Transfer & Trust Co. and ValCom, Inc*., Index No. 651761/2011 ("First Action").

99.  In the First Action, Greystone alleged that ValCom, Vellardita and Continental failed and/or refused to transfer and deliver to plaintiff 5,555,555 unrestricted shares of ValCom common stock pursuant to the terms and conditions of various agreements, as set forth below:

**A.**  **Original loan agreement with Omnireliant Holdings, Inc**.

a.  ValCom and Omnireliant Holdings, Inc. ("Omni") entered into a certain Note Purchase Agreement ("Note") dated January 6, 2009 by which Omni loaned ValCom $100,000 plus interest, subject to reduction of the principal amount should Omni convert any of its outstanding principal into shares of ValCom Common stock.

b.       Under Section 2(a) of the Note, interest on any unconverted principal would accrue at a rate of 10% per annum, payable quarterly on January 5, April 5, July 5 and October 5, 2010.

c.       The January 6, 2009 Promissory Note was secured pursuant to a Security Agreement granting Omni a perfected security interest in certain of ValCom's property and assets and in connection therewith, ValCom granted and issued to Omni a "Common Stock Purchase Warrant" allowing it to purchase 1,000,000 shares of ValCom common stock.

d.       Under Section 4(a) of the Note entitled "Voluntary Conversion", at any time after the Note's issuance, the Note shall be convertible into shares of common stock of ValCom at Greystone's option in whole or in part at any time and from time to time by delivering to ValCom a "Notice of Conversion specifying the principal amount to be converted and the date on which the conversion was to take place. Any conversion under Section 4(a) would serve to reduce the outstanding principal due on the Note by the amount of the outstanding principal of the Note converted pursuant to the Notice of Conversion.

e.       In the absence of a timely objection, ValCom was required to deliver certificates representing the converted shares no later than three (3) trading days after the Conversion date, or be subject to a liquidated damage provision as set forth in Section 4(d)(iv) of the Note.

f.       In addition, the Note stated that if either party commenced an action or proceeding to enforce the provisions of the Note, the prevailing party in such action would be reimbursed by the other party for its attorney's fees and other costs and expenses incurred in connection with the investigation, preparation and prosecution of such action or proceeding.

g.       Pursuant to an "Assignment and Assumption Agreement" ("Assignment") dated July 22, 2010, Omni assigned its entire interest in the Note, Security Agreement and Warrant to Greystone for $75,000 in consideration.

h.       In connection with the Assignment, Vellardita executed an "Acknowledgment of Assignment and Assumption" dated July 22, 2010 on behalf of ValCom wherein he acknowledged and consented to the Assignment and that as of the date of execution of the Acknowledgment, Omni was owed $107,972.22, consisting of $100,000 in principal and $7,972.22 of accrued interest through July 22, 2010 calculated at 10% interest per annum.

**B.     The July 22, 2010 Amendments to original loan agreement with Greystone.**

a.  Pursuant to "Amendment No. 1 to Convertible Debenture and the Common Stock Purchase Warrant dated January 6, 2009" ("Amendment"), Greystone and Vellardita, acting on behalf of ValCom, amended and restated certain terms and conditions of the Note and Warrant.

b.  Section 2 of the Amendment changed the due date of the Note from January 6, 2010 to July 22, 2011.

c.  Section 3 of the Amendment changed the interest rate under the Note from 10% to 18% per annum.

d.  Section 4 of the Amendment changed the Conversion Price of the Note from a fixed share price of $.10 per share to a variable formula calculated at the lesser of thirty percent (30%) of the lowest bid price of the Common Stock during the ten trading days immediately preceding the Conversion date as quoted by Bloomberg, LP or such other quotation service as mutually agreed to by the parties or thirty percent (30%) of the closing bid price of the Common Stock on July 22, 2010.

**C.      Defendants' failure and refusal to honor Greystone's Notice of Conversion.**

a.  On March 23, 2011, Greystone delivered to ValCom and Continental a Notice of Conversion directing that $10,000 worth of the outstanding principal on the Note be converted into 5,555,555 shares of ValCom common stock calculated in accordance with the revised conversion price formula detailed in Section 4 of the Amendment.

b.  Vellardita failed to object to the Notice of Conversion or the method of calculation used by Greystone in requesting 5,555,555 shares of Company stock.

c.  Vellardita failed and/or refused to transfer and deliver to Greystone of the ValCom shares of stock as specified in the Notice of Conversion or other amounts due and owing resulting from Vellardita's failure to honor the conversion.

100.  Greystone contended in its lawsuit that Vince Vellardita held virtually every position at ValCom, that he was a significant shareholder of the Company, that he controlled ValCom and its day to day activities, was intimately involved in the transactions at issue and gave the wrongful order to not honor the Notice of Conversion and was therefore, personally liable for causing ValCom to breach its agreement with Greystone.

101.  Greystone sought damages in excess of $250,000 from Vince Vellardita, individually,

as well as consequential damages, liquidated damages, punitive damages, interest and costs of suit and other relief, including attorney's fees.

102.    Defendant Vince Vellardita failed to provide notice or otherwise advise the ValCom Board of Directors as to his or the Company's failure to comply with Greystone's Notice of Conversion.

103.    Contemporaneously with the July 22, 2010 Amendments to original Loan Agreement with Greystone per the above, Valcom and Greystone entered into a written Settlement Agreement and Release ("Settlement Agreement") in connection with the matter captioned *Greystone Capital Partners, Inc. v. ValCom, Inc.*, filed in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, Case No.: 2010 CA 007633NC, settling a lawsuit filed by Greystone seeking $47,185.34 in damages by transfer of 4,718,534 shares of ValCom stock with a market value of $.07 per share or $330,297 with Court approval, without notice to and authorization by the Company's Board of Directors.

104.    By the terms of the Settlement Agreement executed by Defendant Vince Vellardita on behalf of ValCom on July 22, 2010 in the Florida action, Greystone acquired ValCom's debt with various debt collectors in exchange for shares of the Company at a substantial discount, without disclosing same to ValCom's Board of Directors or obtaining the Board's approval of same, which resulted in a financial windfall to Greystone on terms adverse to the interests of the Company and its Shareholders.

105.    On August 19, 2011, in connection with the First Action, Vellardita entered into a settlement on behalf of the Company and himself, individually without advising the Company's Board of the settlement or obtaining their approval for same, committing ValCom to: a) pay

Greystone $100,000 in satisfaction of the outstanding Note; and b) transfer to Greystone 10,000,000 shares of Company common stock duly and validly issued, fully paid, non-assessable, unrestricted, freely traded and unencumbered free of any restrictive legends or stop transfer orders. Greystone could sell the ValCom stock in excess of 20% of the daily volume on any given day that the shares were sold.

106.    In connection therewith, Vellardita committed the Company, without notice to the Board and approval of same, to a "make whole payment" in the event that Greystone, its owners, successors, transferees, designees or assigns, sell any shares for less than $.05 per share (US).  By the settlement agreement's terms, ValCom was obligated to pay Greystone the difference between the lesser sale price and .05(US), with payment due within 15 days of written demand on ValCom and without notice of same provided to the Company's Board or the Shareholders.

107.    At no time whatsoever, did Defendant Vince Vellardita disclose to the Board that he had been sued by Greystone in his individual capacity or that he had hired an attorney to represent both himself and the Company in connection with the lawsuit.

108.    In fact, Defendant Vince Vellardita fraudulently mislead the Company's Board in October/ November 2011 when he represented that Greystone was paid $100,000 in 2011 to settle ValCom's debt, when he was instructed not to issue shares of Company stock to resolve the dispute. Vellardita's fraudulent representation as to the terms of settlement with Grayson was intended to induce the Board to authorize same and for others, including Tri-Partners, LLC, an investor group, to lend the Company $100,000 to pay the stated debt to Greystone.

109.    By notice dated January 27, 2012, Irwin Weltz, Esq., attorney for Greystone wrote to ValCom and Defendant Vince Vellardita, among others, advising that the "Make Whole Payment"

33

in the August 19, 2011 agreement was $127,333.66 plus $4,977.86 in DWAC fees for a total of $132,311.52, which was due and owing within fifteen (15) days of the demand date.

110.    Greystone filed suit in the Supreme Court of the State of New York, County of New York in the matter captioned, *Greystone Capital Partners, Inc. v. ValCom, Inc.,* Index No: 651104/2012 to recover under the "Make Whole Provision", which matter is pending at this time.

**J.    Civil Conspiracy by Nalin Rathod and Rahul Rathod together with Defendant Vince Vellardita to take over ValCom Board of Directors.**

111.    Defendants Vince Vellardita, Nalin Rathod and Rahul Rathod engaged in a civil conspiracy through fraudulent acts and/or aided and abetted in a civil conspiracy to fraudulently authorize and issue shares of ValCom stock to the Rathods and their company, Solomed PTE Ltd.

112.    Defendants' actions were fraudulently designed and intended to take control of ValCom, dilute the Shareholders' interests in ValCom and otherwise damage the Shareholders right to beneficial ownership in their shares of the Company.

**1.    The Rathods' participation in a fraudulent scheme to take control over 50 million common shares and 50 million shares of Series A Preferred shares of ValCom Stock.**

113.    In response to the August 30, 2011 Resolution of the ValCom Board of Directors to remove Defendant Vince Vellardita from his positions as an officer and director of the Company, as per the above, Vellardita took numerous steps in violation of Delaware law and ValCom's By-Laws to maintain his positions of authority within Valcom and to remove the Board members who sought his ouster by seeking to appoint Nalin Rathod and Rahul Rathod to the Board in their place.

114.    To effectuate this scheme, the Rathods conspired with Vellardita to finalize loan documents that had not been presented to, or approved by, the Board, and attempted to vote

50,000,000 unauthorized and unissued shares of ValCom Series A Preferred stock to elect themselves to the Board of Directors.

115.     In March 2011, following the conclusion of negotiations over the terms of a loan to ValCom between Defendant Vince Vellardita and Nalin Rathod that began in January 2011, Vellardita and the Rathods came to preliminary agreement on a term facility note ("Term Facility"), setting down preliminary written terms in a document entitled Term Facility Term Sheet ("Term Sheet").

116.     This preliminary Term Sheet was drafted and executed solely as a "bridge note transaction" so that the parties could commence the first drawdown while waiting for the final loan documents to be drafted and approved by the Board.

117.     The Term Sheet explained that the finalized Term Facility was to be governed by alternative "Loan Documents" which were not yet drafted and that the Loan Documents would contain "representations, warranties, and covenants" by the borrower and "Subsidiary Guarantees" for the loan. Execution of the Loan Documents were a "condition precedent" to disbursements.

118.     By its terms, the Term Facility loan was not a single transfer of capital to ValCom, but analogous to a one million dollar ($1,000,000) line of credit that permitted ValCom to make incremental drawdowns, subject to specific use of proceeds and procedures, with the first drawdown not to be more than $150,000 and subsequent drawdowns not to exceed $100,000 each.

119.     There has been $350,000 drawn down to date, all of which was carried out unilaterally by Defendant Vince Vellardita without the knowledge and consent of the Board.

120.     Representations were made by Defendant Nalin Rathod that Solomed PTE Ltd would not advance any more money under the Term Facility to ValCom.

121.     According to the Term Sheet, of the $1 million that could potentially be loaned, $800,000 was to be repaid in cash, with the balance of $200,000 and all accrued interest, to be paid back in stock.

122.     The Term Sheet provided that the stock referenced therein would be issued only if the $200,000 was used for a stock buyback (the "Buy Back Shares").

123.     In the event of a default, the loan was "secured by first priority security liens and security interest" in: a) capital stock of ValCom and its subsidiaries; b) Fifty(50) Million shares of ValCom common stock; and c) Fifty (50) Million shares of Series A Preferred shares ("the Collateral Shares").

124.     The Parties contemplated at all times that on the maturity date, the Rathods would receive $800,000 cash and such number of Series A Preferred Shares as was necessary to cover interest under the loan and the Buy Back Shares.

125.     The Term Facility was secured by Fifty (50) million shares of Series A Preferred Company stock, as collateral in case of default.

126.     The fifty (50) million shares of ValCom Series A Preferred stock were issued by Defendant Vince Vellardita unilaterally prior to his removal by Court Order as President and CEO without approval or authorization by the Board or the Company's Shareholders.   Further, the issuance of the shares to Solomed PTE Ltd. and the Term Sheet and Loan Documents were never approved by the Company's Board of Directors.

127.     Upon information and belief, both Carlton Asher, Esq., ("Asher"), attorney for Solomed PTE Ltd. and Jonathan Schechter, Esq. ("Schechter"), attorney for ValCom ("Schechter") warned their respective clients that the fifty (50) million preferred shares to be used as collateral for

the loan were never duly authorized by the Company.

128.    Both the Rathods and Defendant Vince Vellardita were aware or should have been aware that the Series A Preferred shares were never duly issued or authorized.

129.    Although Defendant Vince Vellardita may have attempted to assure the Rathods that the preferred shares were authorized by an email dated March 18, 2011, wherein he stated that "all shares of preferred [stock] have been approved by the shareholders", this statement was false when made.

130.    Despite the fact that both ValCom and the Rathods were represented by counsel, in Defendant Vince Vellardita's email dated March 18, 2011, Vellardita removed the names of the parties respective attorneys from the email chain, including Asher, Barry Melman ("Melman")(counsel for the Rathods) and Schechter.

131.    Although the Term Sheet was signed in March 2011, by August 22, 2011, notwithstanding Defendant Vince Vellardita's prior email referenced above, it was clear that the Rathods and their attorneys knew that the fifty (50) million Series A Preferred shares had not been authorized, that the details of the loan remained in the "proposed" stage, and that the loan had not yet closed.

132.    Defendant Vince Vellardita, with the participation and/or acquiescence of the Rathods allegedly held a meeting of the Board of Directors of the Company on February 16, 2011 at 11:00 a.m., pursuant to an alleged "Waiver and Notice of Consent of Board of Directors/Special Meeting of Board of Directors of ValCom".

133.    This sham meeting was intended, upon information and belief, by the Defendant Vince Vellardita, to defraud the Company and its shareholders by creating fraudulent minutes which

suggested that the Board agreed to "issue 50 million shares of Series A Preferred Stock for the $1,000,000 credit line provided by Solomed."

134.    The minutes were signed by Defendant Vince Vellardita, Defendant Teresa Vellardita for Frank O'Donnell, who denies that such a meeting took place, and Vellardita's administrative assistant, Defendant Ingrid Clavijo, who was not a director of the Company. The minutes were not signed by Board member Patrick Willemsen or any other director and are in direct contravention to another special meeting of the Board that actually took place at 1:30 p.m. on February 16, 2011 (the "Genuine Meeting"). The minutes of the sham meeting were never emailed or circulated to the Board, there were never any email notifications or invitations to the 11:00 a.m. meeting, and no documents were ever produced that acknowledge the existence of the 11:00 a.m. meeting.

135.    At the Genuine Meeting held at 1:30 p.m. meeting on February 16, 2011, the Board minutes stated that "Nalin Rathod is expected to present ValCom with a term sheet for a non-interest investment note of One Million Dollars to be closed by the end of the month".

136.    There is additional evidence that only one meeting took place on that day in the form of an email from Defendant Clavijo setting up a conference call invitation for the Genuine Meeting at 1:30 p.m. on February 16, 2011, with no reference to any conference call of the Board purportedly held at 11:00 a.m. on that same date.

137.    On February 18, 2011, Defendant Clavijo sent an email to the Board of Directors, attaching "the minutes for the Board of Directors meeting [singular] which took place on February 16, 2011", with only the 1:30 p.m. minutes attached to the email.

138.    There is no email circulating the minutes for the purported 11:00 a.m. meeting held on February 16, 2011, similar in form to the email that attached the minutes for the Genuine Meeting

held at 1:30 p.m. on that date.

139.    On February 22, 2011, the Board members exchanged emails commenting on the minutes of the 1:30 p.m. meeting, with no similar exchange existing for the purported 11:00 a.m. meeting.

140.    In response to the Board's decision to terminate Defendant Vince Vellardita as the Company's President and CEO on August 21, 2011, Vellardita  falsely claimed to have called a special meeting of the shareholders of ValCom and claimed that this meeting occurred on August 21, 2011, the same day that he received the letter from the Board removing him as an officer of the Company.

141.    This special meeting, if one actually occurred, was not called in accordance with the Company's By-Laws and SEC required rules and was therefore invalid. Vellardita claimed that he had obtained consent by a majority of the shareholders, which was untrue, to remove three members of the existing board and to replace them with the Rathods, as Directors of the Company.

142.    Defendants Vince Vellardita and the Rathods scrambled to finalize the Loan Documents, backdate documents and execute a shareholder consent vote, effective August 21, 2011, using 50 million Series A Preferred Shares, even though the Loan Documents were not finalized until days after August 21, 2011.

143.    No notice was provide to ValCom shareholders that votes were being solicited to replace the Board and no proxy statement was filed with the SEC pursuant to Regulation 14A.

144.    The Company's Board never voted to affirm the Loan Documents; nor did the Board authorize the issuance of 50 million Series A Preferred Shares.

145.    The ValCom securities issued to the Rathods were not legally issued, fully paid or

non-assessable as: a) the securities were not duly authorized by a proper amendment to the Company's certificate of incorporation; b) the securities were not issued in compliance with ValCom's certificate of incorporation or By-Laws; c) the consideration received by ValCom did not satisfy the Loan Documents; and d) Solomed PTE Ltd. remains liable for additional assessments on the shares of stock issued to them.

146.    Despite only loaning $350,000 to ValCom, which is not in default, Defendants Vince Vellardita and the Rathods conspired by unlawful means to assume ownership over the Fifty (50) million shares of ValCom Series A Preferred stock and vote the shares to completely take control of the Company.

147.    On August 23, 2011, Barry Melman, Esq., attorney for the Rathods emailed Defendant Vince Vellardita to advise that Carl Asher, Esq. was out of town and that he had been asked to follow up with the Defendant regarding his voice mail message earlier in the day  and the necessity for ValCom Board approval required for the Solomed transaction. Mr. Melman provided a form of written consent with the email, which contained Board resolutions approving the various transactions with Solomed, indicating that if Vellardita intended to have the Board meet rather than act by written consent, he should let the attorney know so he could revise the document to a form of secretary's certificate.

148.    A day before that, on August 22, 2011, Asher had sent the above referenced email to the Rathods and Vellardita stating "Solomed must not close without evidence that ValCom's Board of Directors has approved the Note Agreement and all related transactions, including without limitation, the issuance of the Series A Preferred Shares."

149.    Notwithstanding these emails, Defendant Vince Vellardita represented that the

Rathods voted their Series A Preferred shares on August 21, 2011 to remove the existing Board of Directors and to appoint themselves as Directors of the Company.

150.    On August 25, 2011, four days after Vellardita's purported shareholder vote took place, Rahul Rathod emailed his attorney, stating that "it is imperative that we get the dates of the Loan documentation in line with the emergency proxy sent out. I am attaching you the proxy which we signed which is dated August 21. Now clearly this means the date of all documentation of loan must be on or before August 21, 2011."

151     Defendants Vince Vellardita and the Rathods fraudulently backdated documents to complete this transaction and make it appear as if their vote to remove certain members of the Board was valid, even though by August 25, 2011, these documents still had not been completed and even though it was clear to their counsel that the Fifty Million shares of Company stock had not been authorized.

**K.    The formation by Defendant Vince Vellardita of Classic Country LLC on August 31, 2011 and use of that entity with the participation of other parties/non-parties to divert business opportunities from ValCom was a breach of Defendants' fiduciary duties of care, loyalty and good faith and constituted fraud.**

152.    While serving as President, CEO and Chairman of the Board of ValCom, Defendant Vince Vellardita formed a Florida Limited Liability Company on August 31, 2011 known as Classic Country LLC ("Classic Country"), with its principal place of business located at 2701 Gulf Boulevard, Indian Rocks Beach, Florida.

153.    Defendant Vince Vellardita designated himself as Registered Agent for Classic Country, listing the same address as set forth above.

154.    The Managing Members set forth in the Articles of Organization of Classic Country

filed with the Florida Secretary of State on August 31, 2011 were listed as Defendant, Vince Vellardita and Gary Gannoway, located at 2113 Gulf Blvd, Unit A, Indian Rocks Beach, Florida.

>    **1.    Agreement between Gabriel Communication, Inc. and Classic Country LLC dated December 19, 2011.**

155.    On December 19, 2011, Classic Country entered into a Video Production Agreement ("Video Agreement") with Gabriel Communication, Inc. ("Gabriel"), a Tennessee corporation.

156.    By the terms of the Video Agreement, Classic Country claimed to be the sole owner of all intellectual property rights in certain video described therein as the "Gannoway Footage").

157.    By the terms of the Video Agreement, Classic Country engaged Gabriel to create and market three (3) separate DVD video collections from the Gannoway Footage, providing Gabriel with the right to use or not use, edit, mix, and supplement the Gannoway Footage (consisting of ten to fifteen hours of material) on nine to ten DVD disks to create each Video Set, together with all packaging, inserts and sales materials marketed under Gabriel's name or another name selected by it. All copyrights to the Video sets, packaging and marketing materials (but not the Gannoway Footage) were to remain the property of Classic Country.

158.    By the terms of the Video Agreement, which was to begin on December 7, 2011 and run for a term of five (5) years, Classic Country was to receive an advance of $10,000 against any other amounts subsequently due it by this agreement and thereafter, on the first day the Video Set is to be made available for distribution, Gabriel shall pay Country Classic an additional $40,000 as an advance against any other amounts due under the Video Agreement, based on a formula in which Country Classic would receive one half of all royalty payments received.

159.    By the terms of the Video Agreement, Classic Country represented and warranted that

it was sole and exclusive owner of all intellectual property rights in and to the Gannoway Footage and that the use of same pursuant to this Agreement would not infringe any valid and subsisting right to use the Gannoway Footage under any copyright, trade secret or other intellectual property law owned by any person other than Classic Country.

160.    Defendant Vince Vellardita's representations and warranties regarding ownership of the Gannoway Footage was fraudulent, as the subject property was owned by ValCom and/or purchased by ValCom.

### 2.    Broadcast License Agreement between Classic Country and Luken Communications dated February 5, 2012.

161.    On February 5, 2012, Classic Country entered into a Broadcast License Agreement ("Agreement") with Luken Communications, LLC ("Luken" or "Licensee"), located at 225 East 8th St, Suite 200, Chattanooga, Tennessee, to grant Luken non-exclusive broadcast rights to the entire content of the Gannoway Library, including but not limited to the following "Series": Grand Ole Opry, Emergency Call and Amen.

162.    The Series consisted of fifty (50) sixty minute episodes and ninety (90) thirty minute episodes of the Grand Ole Opry, with additional content from the Gannoway Library, including Emergency Call and Amen.

163.    By the Agreement's terms, Classic Country, as the Licensor granted to Luken the non-exclusive broadcast rights for the Series via any technology in the United States and its territories from April 1, 2012 until March 31, 2022 for the sum of $180,000 payable monthly at the rate of $15,000 per month beginning July 1, 2012, until paid in full. Classic Country provided Luken with an option to renew for an additional ten year license period for an additional fee of $180,000 under

the same terms and conditions as set forth in the original Agreement. The number of broadcasts of the episodes within the License term was unlimited.

164.    Vellardita used ValCom as the conduit to purchase the rights to the Gannoway Library, paying no less than $100,000 for same with ValCom's monies, and then improperly directed the benefits of same to Classic Country by his execution of the February 5, 2012 Broadcast License Agreement between Classic Country and Luken, without notice to and consent of the Board and in violation of the status quo order entered by the Court of Chancery of the State of Delaware on September 28, 2011.

165.    Classic Country falsely warranted in the Agreement that as the Licensor:  a) it owned or controlled all rights in and to the selected episodes and all elements thereof and related thereto (including promotional materials provided to Luken, as the Licensee) necessary to grant the rights set forth in the Agreement; and b) that the Licensee's exploitation of the rights granted by the Agreement would not infringe or violate any rights of any third party.

166.    Prior to the execution of the Broadcast License Agreement on February 5, 2012, the library of television programs, consisting of video tapes as defined as the "Series" by the Agreement, was transferred on or about October 11, 2011 from a warehouse in Newark, New Jersey to Chattanooga, Tennessee, with the invoice stating that the moving costs would be billed to Luken Communications, located in Chattanooga, Tennessee, with Classic Company, LLC, located at 2113A Gulf Blvd., Indian Rocks Beach, Florida (the location of ValCom's then Florida headquarters) identified as the entity where the tapes were to be shipped.

167.    Defendant Vince Vellardita failed to advise the Company's Board or its Shareholders of his relationship with Classic Country or obtain permission from the Board for his entering into

44

the Broadcast License Agreement as referenced herein or any other agreements or contracts relating to same on behalf of Classic Country, rather than ValCom.

168.    Previously, on March 21, 2011 Luken completed its negotiations with Vellardita for purposes of establishing a joint venture arrangement with ValCom relating to the operation, programming, distribution and marketing of the "My Family TV" (also, known as "My Family Television") network through a Tennessee limited liability company known as My Family Television, LLC. Under the terms of the joint venture, Luken would hold a fifty percent (50%) interest in My Family Television and would actively manage affiliate television stations throughout the United States under the name of "My Family Television" or "My Family TV".

169.    At the time that Luken entered into the contract with Classic Country on February 5, 2012, Luken was well aware that Vince Vellardita was an officer and director of ValCom as a result of their negotiations over the "My Family Television" joint venture. As such, at all times, Luken owed the Company a fiduciary duty of good faith, loyalty and care not to engage in conduct in breach of that duty.

170.    Defendant Vince Vellardita, as President, CEO and Chairman of the Board of Directors of ValCom also owed the Company a fiduciary duty of good faith, loyalty and care with regard to the Classic Country agreement with Luken.

171.    By entering into the Broadcast License Agreement dated February 5, 2012 with Luken, which resulted in a diversion of corporate opportunities from ValCom to Classic Country, Defendant Vince Vellardita breached the fiduciary duties that he owed the Company, by fraud and other unlawful means, to ValCom's financial detriment.

## COUNT ONE
## FEDERAL RICO

172.    Plaintiff ValCom, Inc. repeats and realleges each and every allegation contained in Paragraphs 1 through 171 of the Complaint as if set forth at length herein.

173.    The Racketeering Influence Corrupt Organizations Act 18 U.S.C. § 1961 et seq. provides a private right of action to recover losses, damages, treble damages and attorney's fees to any person suffering a loss caused by any other person that violates the provisions of the Act.

174.    Defendants Vince Vellardita, Teresa Vellardita, BEI, Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, and others referred to as John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10 (names being fictitious) and ABC Companies 1-10 (names being fictitious) ("Defendants" for this Count only) are "persons" as defined under the Racketeering Influence Corrupt Organizations Act, causing substantial economic loss to the Plaintiff.

175.    At all relevant times and as alleged herein, Defendants were employed by and/or affiliated with the entity or association of persons and entities known as Vince Vellardita and/or BEI and were operating and supporting the "Enterprise", which consists of the association in fact and dealings among and between the Defendants and others.  The Enterprise existed for the purpose of *inter alia*, facilitating the interests of Vincent Vellardita and others in invading the business accounts, assets and stock of ValCom for financial gain.

176.    The Enterprise was conducted through the unlawful actions of the Defendants and/or agents of the Defendants.

177.    The Enterprise constitutes an "enterprise" or "association in fact enterprise" within the meaning of 18 U.S.C. §1961(4) and §1962[c] with relationships and longevity to further the

Defendants common purpose of committing acts to defraud the Plaintiff, ValCom and its shareholders for financial gain.

178.    Defendants were employed by and/or associated with Defendant Vince Vellardita and/or BEI as constituting the Enterprise, and have control over the Enterprise by way of being in control of, or participating in the control of, either directly or indirectly, the operation and management of the associations and activity between them.

179.    Defendants engaged in a pattern of racketeering activity consisting of at least two predicate acts of racketeering by each Defendant for the purpose of defrauding ValCom for financial gain

180.    As alleged herein, Defendants made use of the United States mail, telephone and wires and other acts prohibited by law to defraud Valcom and made material misrepresentations for that purpose, at least to the extent as set forth in the Complaint at paragraphs 25 through 26, paragraphs 29(a) through (m), paragraphs 33 through 59, paragraphs 65 through 82, paragraphs 83 through 110, and paragraphs 111 through 171.

181.    As alleged herein, Defendants took the actions that constitute a continuous pattern of racketeering activity continuously between a date which, upon information and belief, began in 2007 and continued at least through, upon information and belief, April 26, 2012 and thereafter, through their repeated efforts to conceal material information to defraud the Plaintiff, ValCom.

182.    As alleged herein, Defendants took the actions that constitute a pattern of racketeering activity for the same purpose–to fraudulently conceal their invasion of ValCom assets and to fraudulently induce ValCom and others in order to perpetrate this scheme on an ongoing basis for financial gain.

183.    Through its actions as alleged herein, Defendants conspired to defraud ValCom in violation of 18 U.S.C. § 1962[c] and 18 U.S.C. § 1962 [d].

184.    As alleged herein, because the victims of, participants in and methods of commission that comprise Defendants pattern of racketeering activity were the same or similar, these acts of racketeering constitute a continuous and related pattern of racketeering.

185.    As alleged herein, Defendants made use of interstate mails and wires to perpetrate its fraud upon ValCom.

186.    As alleged herein, Defendants by fraud and concealment stole and/or embezzled monies and assets from ValCom for financial gain.

**1.    Predicate Acts of Mail Fraud.**

187.    The federal crime of mail fraud is codified at U.S.C. § 1341.

188.    Defendants committed acts of mail fraud in violation of 18 U.S.C. §1341 by using the Postal Service and private commercial interstate carriers to knowingly and fraudulently make material misrepresentations and to deliberately conceal material information from the Board of Directors and Shareholders of ValCom for the purposes of facilitating their fraud on the Company and to induce the Company and others to continue permitting them to do so.

**2.    Predicate Acts of Wire Fraud.**

189.    The crime of wire fraud is codified at 18 U.S.C. § 1343.

190.    Defendants committed acts of mail fraud in violation of 18 U.S.C. § 1343 by using e-mail and/or other electronic forms of communication to knowingly and fraudulently make material misrepresentations and/or to deliberately conceal material information from the Board of Directors and Shareholders of ValCom for the purpose of facilitating their fraud on the Company and induce

the Company and others to continue permitting them to do so.

###### 3.   Direct Injuries to ValCom, Inc.

191.   ValCom has experienced past and ongoing economic loss, including lost business opportunities, loss of use of monies, loss of leveraging the use of money, loss of income, loss of business, loss of assets in the form of damages paid by the Company to settle claims, lawsuits, or judgments against it or on behalf of others as the result of the Defendants actions and the dilution in value of ValCom stock,  all occurring as a result of Defendants' fraud and fraud in the inducement.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10 (names being fictitious), ABC Companies 1-10 (names being fictitious) for the following relief:

A.      Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.      Awarding Plaintiff costs, interest and attorney's fees as provided by the RICO statute, 18 U.S.C. § 1964;

C.      Awarding Plaintiff actual and treble damages to the full extent provided by 18 U.S.C. § 1964 in an amount to be determined at trial;

D.      For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

**COUNT TWO**
**COMMON LAW FRAUD**

192.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 191 of the Complaint as if set forth at length herein.

193.   As alleged herein, Defendant Vince Vellardita, knowingly and deliberately made material misrepresentations of fact, concealed material information from the Board of Directors of ValCom and its Shareholders  and violated the fiduciary duties of good faith, care and loyalty that he owed to the Company to acquire a financial gain or advantage by fraud, to ValCom's substantial detriment.

194.   Defendant Vince Vellardita intended that the Board of Directors of ValCom, its Shareholders and others would rely on his material representations so as to continue to do business with the Company, loan the Company money and/or approve requests by said Defendant, *inter alia* for loans, security agreements, and stock warrants.

195.   ValCom's Board of Directors and its Shareholders reasonably relied on Defendant Vince Vellardita's material misrepresentations and concealments to its substantial detriment.

196.   As alleged herein, Defendant Teresa Vellardita, knowingly and deliberately made material misrepresentations of fact, concealed material information from the Board of Directors of ValCom and its Shareholders,  and violated the fiduciary duties of good faith, care, and  loyalty that she owed to the Company as a high level managerial agent of the Company and the duty of loyalty that she owed as an employee to divert business to BEI and tortiously interfere with ValCom's actual or prospective economic advantage so as to acquire a financial gain or advantage by fraud, to ValCom's substantial detriment.

197.   ValCom's Board of Directors and its Shareholders reasonably relied on Defendant Teresa Vellardita's material misrepresentations and concealments to its substantial detriment.

50

198.    As alleged herein, Defendant Frank O'Donnell, knowingly and deliberately made material misrepresentations of fact, concealed material information from the Board of Directors of ValCom and its Shareholders, and violated the fiduciary duties of care, loyalty and good faith that he owed to the Company as a Director for financial gain or advantage by fraud, to ValCom's substantial detriment.

199.    ValCom's Board of Directors and its Shareholders reasonably relied on Defendant Frank O'Donnell's material misrepresentations and concealments to its substantial detriment.

200.    As alleged herein, Defendants Vince Vellardita, Teresa Vellardita, BEI, Frank O'Donnell, Nalin Rathod, Rahul Rathod, together with John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10 (names being fictitious) and ABC Companies 1-10 (names being fictitious) acted individually or collectively by which, through intentional perversion, misrepresentation or concealment of truth, they defrauded ValCom of significant monies, assets and corporate business opportunities for financial gain to the Company's substantial detriment.

201.    ValCom has experienced past and ongoing economic loss, including lost business opportunities, loss of use of monies, loss of leveraging the use of money, loss of income, loss of business, loss of assets in the form of damages paid by the Company to settle claims, lawsuits, or judgments against it or others and the dilution in value of ValCom stock, all resulting as a result of Defendants' fraud.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10, ABC Companies 1-10 (names being fictitious) for the following relief:

51

A.     Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.     Awarding Plaintiff costs, interest and attorney's fees as provided by law;

C.     For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

**COUNT III**
**BREACH OF FIDUCIARY DUTIES BY DEFENDANT VINCE VELLARDITA IN HIS CAPACITY AS AN OFFICER AND DIRECTOR OF VALCOM**

202.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 201 of the Complaint as if set forth at length herein.

203.     Defendant Vince Vellardita, as the President, Chief Executive Officer and Chairman of the Board of Directors of ValCom owed the Company the fiduciary duties of good faith, loyalty and care.

204.     Defendant Vince Vellardita, by engaging in conduct contrary to the best interests of ValCom, disregarded on multiple occasions his responsibility as an officer and director of the Company to comply with his fiduciary responsibilities of good faith, loyalty and care by engaging in fraud, civil theft, embezzlement and fraudulent misrepresentations for personal gain to induce others to act under circumstances where *inter alia*,  he: a) transacted business notwithstanding the existence of a conflict of interest due to his relationship with BEI and other investments and b) engaged in self- dealing, usurping of corporate opportunities, civil theft, embezzlement, fraud, waste of corporate assets and other nefarious conduct in bad faith.

205.     As a result of his actions as set forth herein, Defendant Vince Vellardita breached his fiduciary duty of good faith, care and loyalty that he owed ValCom, to the Company's substantial

52

financial detriment and is therefore, liable to ValCom in damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendant Vince Vellardita for the following relief:

A.     Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.     Awarding Plaintiff costs, interest and attorney's fees as provided by law;

C.     For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

### COUNT IV
### BREACH OF FIDUCIARY DUTIES BY DEFENDANT FRANK O'DONNELL IN HIS CAPACITY AS A DIRECTOR OF VALCOM

206.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 204 of the Complaint as if set forth at length herein.

207.    Defendant Frank O'Donnell, while acting in his capacity as a director of ValCom owed the Company a fiduciary duty of good faith, loyalty and care.

208.    Defendant Frank O'Donnell breached the duties of good faith, loyalty and care that he owed the Company as a Director to ValCom's substantial financial detriment by engaging in conduct contrary to the best interests of ValCom for the reasons set forth herein.

209.    Defendant Frank O'Donnell, in violation of his fiduciary responsibility to the Company as a Director, failed to exercise his duties in such capacity with reasonable care, independence and in an informed and deliberate manner in the best interests of the Company and its shareholders and is therefore liable personally for the Company's financial damages..

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendant Frank

O'Donnell for the following relief:

A.     Awarding Plaintiff compensatory damages to the full extent allowed by law.;

B.     Awarding Plaintiff costs, interest and attorney's fees as provided by law.

C.     For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

## COUNT V
## BREACH OF FIDUCIARY DUTIES OF HIGH LEVEL MANAGERIAL EMPLOYEE, DEFENDANT TERESA VELLARDITA

210.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 209 of the Complaint as if set forth at length herein.

211.     Defendant Teresa Vellardita, as the bookkeeper of the Company was in a high level managerial position and therefore, owed the Company a fiduciary duty of good faith, loyalty and fair dealing.

212.     In the course of her employment at ValCom, Teresa Vellardita had full access to the Company's financial records, as she was responsible as bookkeeper for payment of all of ValCom's bills.

213.     In 2007, while employed as bookkeeper at ValCom, Teresa Vellardita formed a corporation in the State of Florida, known as Bridgeport Enterprises, Inc. ("BEI"), in which Defendant Vince Vellardita served as a Director for two years and filed an exemption in the State of Florida for workers' compensation benefits as a "consultant/management" pursuant to a provision in Florida Law permitting same for corporate officers, without notice to or approval by ValCom's Board of Directors.

214.    In her capacity as bookkeeper at ValCom and by virtue of her marital relationship with the co-Defendant Vince Vellardita, Defendant Teresa Vellardita possessed knowledge of the Company's matters that were peculiar to her as a high ranking managerial employee of ValCom, thereby imposing a fiduciary duty on her based on considerations of good faith, loyalty and care.

215.    Defendant Teresa Vellardita violated the duties imposed on her as an employee of ValCom as a result *inter alia*, of her: a) embezzlement of Company funds and fraudulent conveyances of Company monies and assets to the co-Defendant Vince Vellardita and BEI; b) formation and use of BEI, together with her Husband and others, in violation of her fiduciary duties to fraudulently  funnel Company monies and assets to BEI; c) competing against ValCom through BEI, while she continued to serve in the dual capacity as an officer of BEI and the bookkeeper of ValCom, without disclosing same to the Board and/or the Shareholders of the Company and obtain consent for doing so; d) conflict of interest in continuing employment with ValCom while an officer and director of BEI and e) diverting business opportunities to BEI while she was employed as ValCom's bookkeeper, to the Company's substantial financial detriment.

## COUNT VI
## BREACH OF DUTIES OF AN EMPLOYEE, INGRID CLAVIJO

216.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 215 of the Complaint as if set forth at length herein.

217.    Defendant Ingrid Clavijo, while employed by ValCom as an administrative assistant to Defendant Vince Vellardita assisted Vellardita in the commission of fraudulent acts, including but not limited to her fraudulent certification in at least two Resolutions claiming that she was a member of ValCom's Board of Directors, which was untrue, in order to allow Defendant Vince Vellardita

55

to perpetrate his fraudulent schemes on the Company and its Shareholders.

218.    In so doing, Defendant Clavijo violated the duty of loyalty that she owed to the Company as an employee and is therefore liable personally for the Company's damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Teresa Vellardita, and Ingrid Clavijo for the following relief:

A.    Awarding Plaintiff compensatory damages to the full extent allowed by law.;

B.    Awarding Plaintiff costs, interest and attorney's fees as provided by law.

C.    For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

## COUNT VI
## BREACH OF CONTRACT

219.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 218 of the Complaint as if set forth at length herein.

220.    Defendant Vince Vellardita was employed pursuant to a written and/or verbal agreement to serve as ValCom's President and CEO that was entered into on October 1, 2000 for a five (5) year period terminating September 30, 2005, unless extended in accordance with the terms of the contract, that provided for automatic renewals for successive one (1) year period, unless written notice of termination was provided.

221.    By the terms of the Employment Contract, ¶5, Vellardita was required to devote substantially all of his attention, abilities and energies to the business of ValCom during regular business hours.

56

222.    By the terms of the Employment Contract ¶5.2, Vellardita was not permitted to, in the absence of prior written consent of the Company directly or indirectly, engage in any activity competitive with or adverse to the Corporation's business entity, except that the ownership of not more than five percent (5%) of the equity securities of any publicly traded corporation shall not be deemed a violation of this paragraph.

223.    By the terms of the Employment Contract ¶5.3, Vellardita was prohibited from disclosing any of the Company's trades secrets or confidential information, directly or indirectly, or use them in any way either during the term of this agreement or at any time thereafter, except as required in the course of his employment. All files, records, documents and, other items relating to the business of ValCom, whether prepared by Vellardita or otherwise coming into his possession, shall remain the exclusive property of the Company.

224.    By *inter alia*, participating as a Director and a consultant/manager and/or officer of BEI, an entity formed by Defendant Teresa Vellardita in 2007, which he controls directly or indirectly, and engaging in activity competitive with or adverse to the Company, Vellardita breached his contract of employment with the Company.

225.    By *inter alia*, forming Classic Country LLC as its Member, and engaging in activity competitive with or adverse to the Company, Vellardita breached his contract of employment with the Company.

226.    As a result of Defendant Vince Vellardita's actions, the Plaintiff, ValCom, Inc. suffered damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendant Vince Vellardita for the following relief:

A.      Awarding Plaintiff compensatory damages to the full extent allowed by law.;

B.      Awarding Plaintiff costs, interest and attorney's fees as provided by law.

C.      For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

## COUNT VII
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

227.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 226 of the Complaint as if set forth at length herein.

228.    Defendant Vince Vellardita ,in connection with the performance of his employment with ValCom as President, CEO and as Chairman of the Company's Board of Directors was required by agreement to fulfill his responsibilities consistent with the covenant of good faith and fair dealing.

229.    Defendant Vince Vellardita, for the reasons set forth herein, breached the covenant of good faith and fair dealing implied in every contract.

230.    As a result of Defendant Vince Vellardita's actions, the Plaintiff, ValCom suffered damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendant Vince Vellardita for the following relief:

A.      Awarding Plaintiff compensatory damages to the full extent allowed by law.;

B.      Awarding Plaintiff costs, interest and attorney's fees as provided by law.

C.      For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets

resulting from Defendants' actions.

## COUNT VIII
## CIVIL CONSPIRACY

232.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1

through 231 of the Complaint as if set forth at length herein.

233.    Defendants Vince Vellardita, Teresa Vellardita, Frank O'Donnell, Ingrid Clavijo,

Nalin Rathod, Rahul Rathod, Bridgeport Enterprises, Inc. and John Doe(s) 1-10 (names being

fictitious), Jane Doe(s) 1-10 (names being fictitious) and ABC Companies 1-10 (names being

fictitious) engaged in a civil conspiracy to defraud ValCom, divert corporate opportunities and assets

of the Company, or other wrongful conduct with the intent and/or effect of dissipating Company

assets for financial gain, by their combination of two or more persons, pursuant to a real agreement

or confederation with a common design, with an unlawful purpose or a lawful purpose to be

achieved by unlawful means.

234.    As a result of Defendants' conduct as set forth herein, ValCom suffered financial

damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince

Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin

Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10, ABC

Companies 1-10 (names being fictitious) for the following relief:

A.    Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.    Awarding Plaintiff costs, interest and attorney's fees as provided by law;

C.    For all past and ongoing economic loss, including lost business opportunities, loss

of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

**COUNT IX**
**NEGLIGENCE**

235.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 234 of the Complaint as if set forth at length herein.

236.    In the alternative, the Defendants Vince Vellardita, Teresa Vellardita, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe 1-10 (names being fictitious), Jane Doe 1-10 were negligent in connection with their conduct as set forth herein.

237.    As a result of Defendants' negligence, ValCom suffered financial damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10, ABC Companies 1-10 (names being fictitious) for the following relief:

A.    Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.    Awarding Plaintiff costs, interest and attorney's fees as provided by law;

C.    For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

**COUNT X**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

238.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 237 of the Complaint as if set forth at length herein.

60

239.     Defendants Vince Vellardita and Teresa Vellardita acting individually or collectively and with others tortiously interfered with ValCom's prospective economic advantage through fraud and other improper means, including but not limited to the Classic Country contract with Luken as referenced herein and other contracts diverted by Defendants to BEI and upon information and belief, other entities.

240.     ValCom had a reasonable expectation of economic advantage or benefit belonging or accruing to it in connection with these business opportunities, with the Defendants having knowledge of such expectancy of economic advantage.

240.     In the absence of the Defendants' wrongful acts, it is reasonably probable that ValCom would have realized its economic advantage or benefit.

241.     As a result of the Defendants' actions, ValCom suffered damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10, ABC Companies 1-10 (names being fictitious) for the following relief:

A.     Awarding Plaintiff compensatory damages to the full extent allowed by law;

B.     Awarding Plaintiff costs, interest and attorney's fees as provided by law;

C.     For all past and ongoing economic loss, including lost business opportunities, loss of use of money, loss of leveraging the use of money, loss of income, and loss of business and assets resulting from Defendants' actions.

## COUNT XI
## PUNITIVE AND EXEMPLARY DAMAGES

242.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 241 of the Complaint as if set forth at length herein.

243.    Defendants conduct as set forth herein was undertaken maliciously, wilfully and wantonly.

244.    As a result of the Defendants' actions, Plaintiff ValCom suffered financial damages.

WHEREFORE, Plaintiff ValCom, Inc. demands judgment against Defendants Vince Vellardita, Teresa Vellardita, Bridgeport Enterprises, Inc., Ingrid Clavijo, Frank O'Donnell, Nalin Rathod, Rahul Rathod, John Doe(s) 1-10 (names being fictitious), Jane Doe(s) 1-10, ABC Companies 1-10 (names being fictitious) for the following relief:

A.    Awarding Plaintiff punitive and exemplary damages to the full extent allowed by law;

B.    Awarding Plaintiff costs, interest and attorney's fees as provided by law.

**NEAL H. FLASTER, L.L.C.**
Attorneys for Plaintiff,
ValCom, Inc.

By:    /s/ Neal H. Flaster
       Neal H. Flaster

Dated:  May 9, 2013

**JURY DEMAND**

Plaintiff ValCom, Inc. hereby demands trial by jury on all claims so triable.

**NEAL H. FLASTER, L.L.C.**
Attorneys for Plaintiff,
ValCom, Inc.


By:     /s/ Neal H. Flaster
        _____
        Neal H. Flaster

Dated:  May 9, 2013