**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VALCOM, INC., | : | **OPINION ON MOTION TO DISMISS** |
| | : | **BY DEFENDANTS VINCENT** |
| Plaintiff, | : | **VELLARDITA, TERESA** |
| | : | **VELLARDITA, BRIDGEPORT** |
| v. | : | **ENTERPRISES, INC., INGRID** |
| | : | **CLAVIJO AND FRANK O'DONNELL** |
| VINCENT VELLARDITA, TERESA | : | |
| VELLARDITA, BRIDGEPORT | : | No. 2:13-cv-3025-WHW-CLW |
| ENTERPRISES, INC., INGRID CLAVIJO, | : | |
| FRANK O'DONNELL, NALINKANT | : | |
| AMRATLAL RATHOD, RAHUL NALIN | : | |
| RATHOD, JOHN DOES 1-10, JANE DOES | : | |
| 1-10, ABC COMPANIES 1-10, | : | |
| | : | |
| Defendants. | : | |

Defendants Vincent Vellardita ("Mr. Vellardita"), Teresa Vellardita ("Mrs. Vellardita"), Bridgeport Enterprises, Inc. ("BEI"), Ingrid Clavijo ("Ms. Clavijo") and Frank O'Donnell ("Mr. O'Donnell") move for dismissal of Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Plaintiff ValCom, Inc. ("ValCom" or the "Company") opposes. The motion has been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78. The motion to dismiss is granted in part and denied in part.

### Factual History

The facts, taken in the light most favorable to the non-moving party, are:

In 1983, Mr. Vellardita founded a company, Valencia Entertainment International, and in 1992, incorporated ValCom in Delaware. Compl. ¶ 19. In 1992, Valencia and ValCom merged with SBI Communications, Inc., to form ValCom, Inc., with Mr. Vellardita as President,

**NOT FOR PUBLICATION**

Chairman and CEO. *Id.* The company produces, broadcasts and distributes film, television and live theater, and also maintains a library of such content. *Id.* ¶ 20.

A power struggle for the company played out in 2011 and 2012, allegedly involving the following sequence of events. *See* Compl. ¶¶ 25-26, 113-51. On August 22, 2011, ValCom's "Attending Board of Director Members" recommended that the Company remove Mr. Vellardita as Chairman, President and CEO. *Id.* ¶ 21.[1] Sometime in the next few days, Plaintiff states, Mr. Vellardita and the Rathod Defendants created "backdated" documents showing that they had ousted Directors Silvana Costa Manning, Timothy Harrington and Michael Vredegoor and seized control of the Board *before* the Board recommended removing Mr. Vellardita. *Id.* ¶¶ 26, 140, 142, 150-51. On August 26, 2011, Ms. Costa Manning and Mr. Willemsen sued in the Delaware Court of Chancery to resolve the issue. *Id.* ¶ 27. On August 30, 2011, the Board—presumably including the members Mr. Vellardita attempted to oust—voted to remove him from his positions at the Company. *Id.* ¶ 23. On September 28, 2011, the Court of Chancery entered a "Status Quo Order" requiring that the Board retain five of its six members—Mr. Vellardita, Mr. O'Donnell, Ms. Costa Manning, Mr. Harrington and Mr. Vredegoor—and Mr. Vellardita would retain his positions pending final adjudication. *Id.* ¶ 28. On March 30, 2012, the Delaware Court found that the Board resolution of August 30, 2011 removing Mr. Vellardita was effective. *Id.* ¶ 30. On April 26, 2012, Mr. Vellardita and Mr. O'Donnell resigned from the Board. *Id.* ¶ 31.

On February 29, 2012, the Board determined that various alleged misdeeds justified an investigation into Mr. Vellardita's conduct, including failure to provide the Board with basic financial information or to file routine disclosures such as a 10K. Compl. ¶ 29. The investigation allegedly turned up many other violations of fiduciary duty, such as failures to account for

[1] Elsewhere the Complaint alleges that this occurred on August 21, 2011. *See id.* ¶ 140.

**NOT FOR PUBLICATION**

millions of dollars paid out of ValCom accounts and issuance of stock to himself and others

without Board approval, as well as usurpation of corporate opportunities. *Id.* ¶ 34. Plaintiffs offer

a litany of other misdeeds by Mr. Vellardita, including: in September 2011, he entered a

promissory note and Pledge and Security Agreement using his personal stake in ValCom as

collateral, without Board approval, *id.* ¶¶ 36-43; in October 2010, facing a lawsuit filed against

him and Mrs. Vellardita in their personal capacities, he authorized the company to pay for his

legal bills and to issue stock as part of the settlement, without Board approval, *id.* ¶¶ 45-52; in

August 2011, facing a lawsuit filed against him and Mrs. Vellardita in their personal capacities,

he entered a settlement agreement requiring them to pay personal funds, but invoiced ValCom

for reimbursement of those funds, *id.* ¶¶ 53-59; in July and November 2011, together with Ms.

Clavijo, who was not a member of the Board, he fraudulently enacted two Securities Purchase

Agreements without the presence of a quorum of the Board, *id.* ¶¶ 66-74; in February 2011,

together with Mrs. Vellardita, he fraudulently wired funds to himself, via BEI, a company he and

his wife control, from ValCom's account, *id.* ¶¶ 75-77; in May 2011, together with Mr.

O'Donnell, he fraudulently and without Board approval issued ValCom stock to satisfy a

$22,500 debt of BEI, *id.* ¶¶ 78-82; in April 2011, fraudulently and without Board approval, he

issued ValCom stock as collateral for two loans, the proceeds of which were then transferred by

wire from ValCom to BEI, at a rate which produced a windfall for the lenders, *id.* ¶¶ 83-86; in

May and August 2011, he fraudulently misrepresented the relationship between himself, his

wife, ValCom and BEI in various securities transactions to "obtain a personal benefit adverse to

the Company's interests," *id.* ¶¶ 87-94; from October 2007 through July 2011, he used ValCom

accounts to pay BEI for "consulting work," in actions that amounted to "fraud, civil theft and

embezzlement," *id.* ¶¶ 95-97; in July 2010 and August 2011, he amended a loan agreement and

NOT FOR PUBLICATION

then settled a lawsuit related to that agreement on terms adverse to the interests of ValCom and

its shareholders, in a way that produced a windfall to the lender, in a settlement which required

issuance of ValCom shares despite specific instructions from the Board not to do so, and that he

misrepresented the terms of that settlement to the Board, *id.* ¶¶ 98-110; from January through

August 2011, he conspired with the Rathods to give them ownership of ValCom and take over

the Board, in violation of Delaware law and ValCom's By-Laws, *id.* ¶¶ 113-51; in August 2011,

he formed a competing video production company, Classic Country LLC, in violation of his

duties to ValCom, *id.* ¶¶ 152-54; from December 2011 to April 2012, he used ValCom funds to

purchase the rights to video content which he then sold via fraudulent representations, with the

benefits directed to Classic Country, LLC, *id.* ¶¶ 152-171.

## Procedural History

On April 26, 2012, Plaintiff filed a complaint, case 7458, in the Delaware Court of

Chancery against Defendants Mr. Vellardita, Nalikant Amratlal Rathod, Rahul Nalin Rathod and

Solomed PTE Ltd. Notice of Removal, Do. No. 2:13-cv-5153 (WHW) ECF No. 1. On June 12,

2012, Mr. Vellardita removed that case to the federal district court in Delaware. *Id.* Do. No.

1:12-cv-00749 (GMS). Various proceedings took place in the District of Delaware: Mr.

Vellardita answered the complaint, ECF No. 3 (June 19, 2012); he amended his answer and

added counterclaims, ECF No. 22 (Nov. 1, 2012); the complaint was dismissed without prejudice

as against the Rathod Defendants, ECF No. 29 (Nov. 15, 2012); and Plaintiff answered the

counterclaims, ECF No. 30 (Nov. 26, 2012). But on August 26, 2013, the parties stipulated to

transfer that action to the District of New Jersey, where it acquired docket number 2:13-cv-5153.

ECF No. 44.

On May 9, 2013—22 days before discovery was due in the District of Delaware matter—

Plaintiff had filed a complaint in this Court under docket number 2:13-cv-3025. This complaint

NOT FOR PUBLICATION

names as Defendants Mr. Vellardita, Mrs. Vellardita, BEI, Ms. Clavijo, Mr. O'Donnell,

Nalinkant Rathod and Rahul Rathod, as well as fictitious natural and corporate persons listed as

John Does 1-10, Jane Does 1-10, and ABC Companies 1-10. 2:13-cv-3025, ECF No. 1.

The complaint contains 12 causes of action: Count I, federal RICO, as against all

Defendants (*id.* ¶¶ 172-91); Count II, common law fraud, as against all Defendants (*id.* ¶¶ 192-

201); Count III, breach of fiduciary duties by Mr. Vellardita in his capacity as Officer and

Director of ValCom (*id.* ¶¶ 202-05); Count IV, breach of fiduciary duties by Mr. O'Donnell in

his capacity as Director of Valcom (*id.* ¶¶ 206-09); Count V, breach of fiduciary duties by Mrs.

Vellardita as a "high level managerial employee" of ValCom (*id.* ¶¶ 210-15); Count VI, breach

of fiduciary duties by Ingrid Clavijo as an employee of ValCom (*id.* ¶¶ 216-18); Count VII

(mislabeled Count VI), breach of contract by Mr. Vellardita (*id.* ¶¶ 219-26); Count VIII

(mislabeled Count VII), breach of the covenant of good faith and fair dealing by Mr. Vellardita

(*id.* ¶¶ 227-30); Count IX (mislabeled Count VIII), civil conspiracy, as against all Defendants

(*id.* ¶¶ 232-34); Count X (mislabeled Count IX), negligence, as against all Defendants (*id.* ¶¶

235-37); Count XI (mislabeled Count X), tortious interference with prospective economic

advantage by Mr. and Mrs. Vellardita (*id.* ¶¶ 238-41); and Count XII (mislabeled Count XI),

punitive and exemplary damages, as against all Defendants (*id.* ¶¶ 242-44).

The civil cover sheet indicates four related cases in addition to the District of Delaware

case: *Bridgeport Enterprises, Inc., v. Valcom, Inc.*, No. 8:13-cv-00833-T-30MAP (J. Pizzo) and

*Vellardita v. Harrington*, No. 8:13-cv-00294-VMC-MAP (J. Hernandez-Covington), in the

Middle District of Florida; *Greystone Capital Partners, Inc. v. Valcom, Inc.* and *Valcom, Inc. v.

Vincent Vellardita*, Index No.: 651104/2012 (J. Coin) in state court in New York; and *Fontaine

Resource Group v. Valcom, Inc.*, Civ. No. 2:12-cv-2980 (WHW), before this Court.

**NOT FOR PUBLICATION**

On July 29, 2013, Plaintiff requested that the Office of the Clerk issue summonses for Nalinkant Rathod and Rahul Rathod. ECF No. 4. On August 1, 2013, Plaintiff requested permission for alternative service of process, due to allegations that Mr. Vellardita "is evading service of process" and that Mrs. Vellardita "has purposely mislead [sic] Plaintiff's process server" to obstruct service of process on her husband. ECF No. 5-1 at 3. Plaintiff claims that they attempted service both at the Vellarditas' home address in Belleair Beach, FL, and at the offices of BEI. Cert. of K. Spassione, August 1, 2013, ¶¶ 3-5, ECF No. 5-2. On August 21, 2013, Defendant Vincent Vellardita consented to service and provided the court with a "Service Acknowledgement Form." ECF No. 8. Plaintiff withdrew its motion. ECF No. 9.

On September 19, 2013, Defendants Mr. Vellardita, Mrs. Vellardita, BEI, Ms. Clavijo and Mr. O'Donnell filed the present motion to dismiss. ECF No. 11. On November 14, 2013, this court consolidated the matter transferred from Delaware, New Jersey Do. No. 2:13-cv-5153, with the matter which originated here, New Jersey Do. No. 2:13-cv-3025. Order of Consolidation, ECF No. 21. That order did not affect Defendants' motion to dismiss and on November 18, Plaintiff filed its opposition to that motion. ECF No. 22. Plaintiff also filed a motion for leave to file an amended complaint, but did not include a draft amended complaint. ECF No. 23, Cert. of N. Flaster ¶ 2. The parties then proceeded to send the court a series of nonsensical letters about whether or not they had entered a stipulation regarding changes to the table of authorities in Plaintiff's Opposition to Defendants' Motion to Dismiss. ECF Nos. 24-25, 27-28. This court granted leave to file an amended memorandum of law, containing corrections to the table of authorities and nothing else. ECF No. 29. Plaintiff did so, ECF No. 9 (Dec. 2, 2013), and Defendants timely replied, ECF No. 31 (Dec. 9, 2013).

**NOT FOR PUBLICATION**

Defendants' argument, essentially, is that they cannot be liable for any of the wrongdoing in Plaintiff's complaint because every alleged misdeed was nothing more than an exercise of business judgment. *See* Defs.' Mot. to Dismiss at 10. Defendants' motion is granted in part and denied in part.

## LEGAL ANALYSIS

### I.    Standard on a Motion to Dismiss

A plaintiff is required to plead nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss for failure to state a claim upon which relief can be granted, the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fed. R. Civ. P. 12(b)(6); *Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 306 (3d Cir. 2007) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotation marks and citations omitted). It is not sufficient merely to state the elements of a claim; a claim must be supported by "[f]actual allegations" sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Still, "a district court weighing a motion to dismiss asks not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 563 n.8 (quotation and citation omitted).

In considering the plaintiff's claims, the court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A.

**NOT FOR PUBLICATION**

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. West 2013). "A document integral to or explicitly relied on in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citation omitted).

To the extent a plaintiff's complaint implicates fraud, those claims will be governed by the higher standard of Rule 9(b) rather than by Rule 8(a)(2) and *Twombly/Iqbal*: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). This normally requires a plaintiff to "allege the date, time and place of the alleged fraud," but could also be satisfied if the complaint "otherwise inject[s] precision or some measure of substantiation" into the allegation. *Id.* The Third Circuit has advised that "[c]ourts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted). The rule itself provides that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II.    Plaintiff's Motion to Amend the Complaint

On November 18, 2013, Plaintiff moved for permission to submit an amended complaint. ECF No. 23.

Ordinarily, a plaintiff should be granted the right to amend its pleading once "as a matter of course" within 21 days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(A). After that point, amendment is allowed only with permission of a party's adversary or the court,

NOT FOR PUBLICATION

though "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nonetheless, this Circuit requires that a plaintiff "must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

Plaintiff's motion to amend, ECF No. 23, was filed on November 18, 2013—more than 21 days after Defendant filed its motion to dismiss on September 19, 2013, ECF No. 11. It was not accompanied by a draft amended complaint. Because a "plaintiff's failure to provide a draft amended complaint would be an adequate basis on which the court could deny his request to amend," *Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed. App'x 354, 367 (3d. Cir. 2010) (citation and quotation marks omitted), the court rejects the motion.

## III.   Count I: Federal RICO

Plaintiff's first of many claims against Defendants is that they violated the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. Plaintiff alleges both a substantive violation under § 1962(c) and a conspiracy under § 1962(d).

Under the RICO statute, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it unlawful to conspire to violate § 1962(a), (b) or (c). Section 1964(c) provides a private right of action to anyone injured by violations of § 1962, provided the violation was the proximate cause of the damage suffered. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006). The Supreme Court has explained that to state a claim in such a private right of action, a plaintiff must allege

**NOT FOR PUBLICATION**

"(1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

An "enterprise" for purposes of the RICO statute "includes any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in

fact although not a legal entity." 18 U.S.C. § 1961(4). This last type of enterprise, a "group of

individuals associated in fact although not a legal entity," is commonly called an "association-in-

fact enterprise." The Supreme Court has instructed that as a general matter, the concept of

"enterprise" is "expansive" and that, like the rest of the RICO statute, it should be "liberally

construed to effectuate its remedial purposes." *Boyle v. United States*, 556 U.S. 938, 944 (2009)

(citations omitted). The court thus set forth a definition with "wide reach": "an association-in-

fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 948

(citing *United States v. Turkette*, 452 U.S. 576 (1981)). Such requires three things: structure,

continuity, and distinctness. These three requirements are not necessary at the pleading stage, *HT*

*of Highlands Ranch, Inc. v. Hollywood Tanning Systems, Inc.*, 590 F. Supp. 2d 677, 689 (D.N.J.

2008), but a plaintiff hoping to survive a motion to dismiss must "suggest plausibly the existence

of an enterprise structure," *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir.

2010). For clarity, the court will explain the three requirements in further detail.

First: structure. An association-in-fact enterprise must have "some sort of structure . . . .

There must be some mechanism for controlling and directing the affairs of the group on an on-

going, rather than ad hoc, basis." *Id.* at 365 (quoting *United States v. Riccobene*, 709 F.2d 214,

221-24 (3d Cir. 1983) (interpreting *Turkette*)). *See Turkette*, 452 U.S. at 583. The structure need

not be "business-like" or have a formal chain of command, *Boyle*, 556 U.S. at 945, but it must be

characterized by three "structural features": "a purpose, relationships among those associated

**NOT FOR PUBLICATION**

with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," *id.* at 946.

Second: continuity. In addition to "structure," the second necessary characteristic of an association-in-fact enterprise is that "the various associates function as a continuing unit." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 365. This is a flexible requirement; it "does not mean that individuals cannot leave the group or that new members cannot join at a later time." *Id.* But it does require "that each person perform a role in the group consistent with the organizational structure . . . which furthers the activities of the organization." *Id.*

Third: distinctness. The association in fact must be "an entity separate and apart from the pattern of activity in which it engages." *Boyle*, 556 U.S. at 954 (quoting *Turkette*, 452 U.S. at 583). This means that "the existence of an enterprise is a separate element that must be proved," but does not mean that "the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Id.* at 947. To the contrary, proof of the "enterprise" and of "pattern" elements may sometimes "coalesce." *Boyle*, 556 U.S. at 947 (quoting *Turkette*, 452 U.S. at 583).

Courts often address the "enterprise" question in light of the metaphor of a wheel composed of a hub, spokes and a rim. In *In re Ins. Brokerage Antitrust Litig.*, the Third Circuit considered RICO allegations involving the nation's biggest insurance companies and the brokers who served as middlemen between the insurers and customers. *Id.* at 374. Plaintiffs alleged six "hub-and-spoke" enterprises, in each of which an insurance broker (the "hub") colluded with insurers (the "spokes") to "maximize insurers' retention of existing customers." *Id.* at 312. The court found five of the six alleged enterprises to each be, at most, a "rimless wheel conspiracy": "one in which various defendants enter into separate agreements with a common defendant, but

11

**NOT FOR PUBLICATION**

where the defendants have no connection with one another, other than the common defendant's involvement in each transaction." *Id.* at 327. Without a "rim," plaintiff's allegations lacked "the basic requirement that the components function as a unit, that they be 'put together to form a whole.'" *Id.* at 374. A rimless wheel is not an enterprise.

Another way that courts consider the questions of both "structure" and "continuity" is by looking at whether the acts of the members of the supposed enterprise are "independent" as opposed to "dependent" or "symbiotic." A case from the Southern District of New York, *Cedar Swamp Holdings, Inc. v. Zaman,* 487 F. Supp. 2d 444 (S.D.N.Y. 2007), is instructive. In *Cedar Swamp*, plaintiff company and its shareholders sued a husband and wife team who had worked as their "principal legal advisors, strategists and confidantes." *Id.* at 446. Plaintiffs explicitly alleged a "hub and spoke" scheme, in which the husband and wife defendants served as the "hub" and enlisted various other defendants to help conduct a series of fraudulent transactions as part of a "master scheme" to enrich themselves at plaintiffs' expense. *Id.* at 451. The court found that plaintiffs' claims were insufficient because they had alleged only "that the perpetrator of a series of independent fraudulent transactions used a different accomplice to aid each transaction." *Id.* Alleging a RICO enterprise requires more: "a plaintiff must allege that the defendants operated *symbiotically* and played necessary roles in the achievement of a common purpose." *Id.* at 451 (emphasis added). It was probative that each defendant "acted on a particular occasion to benefit themselves and not to benefit the participants of any other scheme." *Id.* at 452. *See also City of New York v. Chavez*, 944 F. Supp. 2d 260, 275 (S.D.N.Y. 2013) ("If each act of fraud is equally effective without the perpetration of any other act of fraud . . . then there is no RICO enterprise . . . . There is no allegation in this case of any *symbiosis*, of any meeting of the minds among the various actors acting as a single unit, or of any reliance of any [defendant] on any

**NOT FOR PUBLICATION**

other such [defendant], or of any benefit conferred among the [defendants]." (emphasis added));

*N.Y. Auto. Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, Civ. No. 97-3164, 1998 WL

695869, at *1, *5-6 (S.D.N.Y. Oct. 6, 1998) (finding no enterprise where the defendants

"committed similar but independent frauds with aid of [one defendant], and that each [defendant]

acted on a particular occasion to benefit himself or herself and not to benefit any other"

defendant). *But see Virginia Sur. Co., Inc. v. Macedo*, Civ. No. 08-5586 (GEB), 2011 WL

1769858, at *13 (D.N.J. 2011) (finding an association-in-fact enterprise where "Defendants'

alleged acts, while occasionally *ad hoc*, were dependent on one another, were united in purpose,

and have continued to play out over the past five years"); *Fuji Photo Film USA Inc. v. McNulty*,

640 F. Supp. 2d 300, 306-08, 314 (S.D.N.Y. 2009) ("[Defendant manager] occupied the center of

the enterprise and used his position within [plaintiff company] to coordinate the activities of the

individual and corporate defendants that made up the enterprise's outer edge.")

      Here, the complaint alleges that the Defendants "were operating and supporting the

'Enterprise', which consists of the association in fact and dealings among and between the

Defendants and others." Compl. ¶ 175. Plaintiff claims that the enterprise functioned with the

"common purpose of committing acts to defraud the Plaintiff, Valcom and its shareholders for

financial gain." *Id.* ¶¶ 177. The allegations boil down to this: that Mr. Vellardita, often working

with his wife, conspired to and committed various acts with the purpose of extracting value from

ValCom for his own benefit. Along the way, the company alleges, various Defendants helped

Mr. Vellardita carry out this scheme, including Mr. O'Donnell, Ms. Clavijo and the Rathod

Defendants.

      This is not a RICO enterprise. Plaintiff has failed to "suggest plausibly the existence of an

enterprise structure" characterized by "some mechanism for controlling and directing the affairs

**NOT FOR PUBLICATION**

of the group on an on-going, rather than ad hoc, basis." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370, 365. As for the three "structural requirements," while Plaintiff alleges a common purpose, there is neither any suggestion of "relationships among those associated with the enterprise" or "symbiosis," nor is there any sign that the putative enterprise had the requisite "longevity." As in *Cedar Swamp Holdings*, the complaint alleges nothing more than "that the perpetrator of a series of independent fraudulent transactions used a different accomplice to aid each transaction." 487 F. Supp. 2d at 451. The continuity prong similarly comes up short. Plaintiff has not plausibly alleged the existence of anything which operated as a "continuing unit" in which "each person perform[ed] a role in the group consistent with the organizational structure . . . which furthers the activities of the organization." *Id.* This is, at best, a rimless wheel. It is not an enterprise.

Because Plaintiff has failed to plausibly plead an association-in-fact RICO enterprise, its RICO claim under § 1962(c) fails and the court does not reach the other RICO elements. It follows that the conspiracy claim under § 1962(d) must fail as well. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir.1993). The court dismisses Count I of the complaint without prejudice.

### IV.   Choice of Law: Overview for All Common Law Claims

Because Plaintiffs have asserted various claims under state common law, the court must consider which laws apply. Defendants argues that Florida law should apply to all of the common law claims because ValCom was, during the relevant time period, located in Florida. Defs.' Mot. to Dismiss at 6. Plaintiff rightfully recognizes that the choice of law determination will vary issue by issue, while also arguing that it is premature for the court to decide choice of law at all. Pl.'s Opp'n to Mot. to Dismiss at 7-13, ECF No. 30.

NOT FOR PUBLICATION

A federal court with diversity jurisdiction applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In New Jersey, the relevant test is the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, which has two steps: checking for an "actual conflict" and determining the "most significant relationship." *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-44 (2008). Courts apply this test "issue-by-issue," meaning the court must determine which law to apply for each cause of action. *Id*. at 143; *see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). At the outset, the court decides if there is an actual conflict, if "the choice of one forum's law over the other will determine the outcome of the case." 15A C.J.S. Conflict of Laws § 30 (2013). If there is no conflict or only a "false conflict"—where "the laws of the two jurisdictions would produce the same result on the particular issue presented"—the substantive law of the forum state applies. *Id.* § 31; *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). If there is an actual conflict, the court determines which jurisdiction has the "most significant relationship to the claim." *Camp Jaycee*, 197 N.J. at 143; *see Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).

Plaintiff argues that it is premature to conduct the choice of law analysis. Pl.'s Opp'n to Mot. to Dismiss at 7-13, 23 (citing *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009)). In *Harper*, the court refused "to make the fact-intensive choice-of-law determination on the record before it." 595 F. Supp. at 491. *Harper* recognized that "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Harper*, 595 F. Supp. 2d at 491. Courts in this circuit and district routinely find that the facts are sufficiently developed to conduct the choice of law analysis at the motion to dismiss stage. *Cooper v. Samsung Elecs. of Am., Inc.*, 374 Fed. App'x 250, 255 n.5 (3d Cir. 2010) (rejecting

15

**NOT FOR PUBLICATION**

argument that district court erred by addressing choice of law issue at motion to dismiss stage). The court will proceed claim by claim and make a choice of law determination where possible.

## V.   Count II: Common Law Fraud

Because Plaintiff pleads common law fraud against each of the defendants, the court will first address the choice of law and then consider the allegations one defendant at a time.

### a) Choice of Law

The first of Plaintiff's state law claims is that Defendants are liable for common law fraud. Possible laws which might apply include New Jersey, Florida and Delaware. Defendants argue for Florida. Defs.' Mot. Dis at 26. Plaintiff argues that the elements of common law fraud differ among these jurisdictions. Pl.'s Opp'n to Mot. to Dismiss at 11-12.

The elements of common law fraud in these three states are very similar. In Florida, a plaintiff must allege "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985)). In New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In Delaware, a plaintiff must allege: "1) a false representation, usually one of fact . . . ; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such

**NOT FOR PUBLICATION**

reliance." *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992)).

In each of these states, omission is as culpable as misrepresentation. *Gaffin*, 611 A.2d at 472 ("[Fraud] may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak.") (quotation and citation omitted); *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624 (1981) ("Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith."); *Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 946 (Fla. Dist. Ct. App. 2012) *review denied*, SC13-261, 2014 WL 622619 (Fla. Feb. 13, 2014) ("Fraud can occur by omission, and one who undertakes to disclose material information has a duty to disclose that information fully.").

There is no actual conflict among these laws. Florida requires a plaintiff to plead reliance and injury, New Jersey requires reasonable reliance and damage and Delaware requires justifiable reliance and damage. There is no actual conflict if the different laws "would produce the same result on the particular issue presented." *Williams*, 109 F.3d at 893. The court finds that there is no actual difference among the standards for pleading common law fraud in Florida, New Jersey and Delaware. Because there is no substantive conflict, the court applies the law of the forum state, New Jersey. 15A C.J.S. Conflict of Laws § 31.

### b) Mr. Vellardita

The complaint alleges that Mr. Vellardita knowingly made various material misrepresentations and omissions to the corporate Plaintiff with the intent that it rely on them, and that ValCom and its Board did rely and suffered damages. The complaint alleges a litany of misrepresentations, such as an inaccurate description to the Board of the terms of a settlement he entered on behalf of himself and the company in 2011, Compl. ¶ 108, and the purpose for an

**NOT FOR PUBLICATION**

issuance of stock which the Board approved, *id.* ¶ 34(b). It also alleges many omissions, such as Mr. Vellardita's failure to report issuances of stock which the Board did not approve, *id.* ¶¶ 34(f), 34(p), and an inquiry by the Securities and Exchange Commission, *id.* ¶ 29(g). These are but a few examples from a complaint chock full of them. There can be no doubt that ValCom has adequately alleged it acted in reliance on Mr. Vellardita's representations and that this caused damage to the company. As example, the company actually issued stock according to these alleged misrepresentations. *See, e.g.*, Compl. ¶¶ 81, 86, 90, 108. These allegations contain particularity sufficient to satisfy Rule 9(b).

   **c) Mrs. Vellardita**

   The complaint alleges that Mrs. Vellardita misrepresented to the company her right to be reimbursed for funds the Vellarditas paid to settle a lawsuit brought against them in their individual capacities, Compl. ¶ 58, and her husband's right to payment for BEI's "consulting work," *id.* ¶ 95. While Plaintiff has not yet proved that these payments were in fact unauthorized or inappropriate, it has sufficiently pled that they were and that Mrs. Vellardita knew as much. If Mrs. Vellardita intended ValCom to rely on these representations then ValCom, by paying funds it was not obligated to pay and should not have paid, plausibly acted in reliance on those representations and suffered damage as a result. These allegations contain particularity sufficient to satisfy Rule 9(b).

   **d) BEI**

   Though Plaintiff alleges that Mr. and Mrs. Vellardita fraudulently funneled money to themselves via BEI, there is no allegation that BEI itself made any material misrepresentations on which ValCom relied. Count II is dismissed without prejudice as against Defendant BEI.

NOT FOR PUBLICATION

e)  **Ms. Clavijo**

Plaintiff alleges that on three occasions, Ms. Clavijo misrepresented herself as a member of the Board of ValCom, even though she knew she was not; that she intended the company to rely on these misrepresentations; that, acting in reliance on this misrepresentation, ValCom invalidly issued stock, an action a proper quorum of the Board would not have taken; and that this caused damage to the company. Compl. ¶¶ 68, 72, 134. These allegations contain particularity sufficient to satisfy Rule 9(b).

f)  **Mr. O'Donnell**

Plaintiff alleges that on one occasion, Mr. O'Donnell fraudulently signed a resolution indicating that a quorum of the Board was present, knowing that it was not; that he intended the company to rely on this misrepresentation; that, acting in reliance on this misrepresentation, ValCom invalidly issued stock to relieve a debt of BEI, an action a proper quorum of the Board would not have taken; and that this caused damage to the company. Compl. ¶¶ 78-82, 198. These allegations contain particularity sufficient to satisfy Rule 9(b).

g)  **The Rathod Defendants**

Plaintiff alleges that the Rathod Defendants falsified documents to convey to themselves shares of ValCom which they were not owed and changed the dates on the documents to make it seem like they acquired their shares before the Board voted to remove Mr. Vellardita. *See, e.g.*, Compl. ¶ 142. The complaint alleges that they knew the shares were not validly issued, *id.* ¶ 127, and that Rahul Rathod knowingly backdated the relevant loan documentation, *id.* ¶ 150. But according to Plaintiff, the Delaware Court of Chancery ultimately found that these actions were invalid, so it is not clear that ValCom relied on these representations or suffered damage as a result. Though the company incurred legal fees in that action, "attorneys fees are not ordinarily included as damages in a fraud action," unless the aggrieved party "is forced into litigation with

NOT FOR PUBLICATION

a *third party* as a result of another's fraud." *Dorofee v. Planning Bd. of Pennsauken Twp.*, 453 A.2d 1341, 1343 (N.J. Super. Ct. App. Div. 1982) (emphasis added).

The Rathod Defendants did not join this motion to dismiss and the Third Circuit has made it clear that, "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent on the face of the complaint." *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also Woodson v. Payton*, 503 Fed. Appx. 110, 113 (3d Cir. 2012) (affirming dismissal of action where expiration of statute of limitations was apparent on the face of the complaint). Here, the complaint does not contain the elements of a common law fraud claim against these Defendants. Because it acts sua sponte, the court dismisses these claims without prejudice.

In sum, Plaintiff has adequately plead common law fraud against Defendants Mr. Vellardita, Mrs. Vellardita, Ms. Clavijo and Mr. O'Donnell. The claims against Defendant BEI and the Rathod Defendants are dismissed without prejudice.

## VI.   Counts III – VI: Fiduciary Duty Claims: Choice of Law

The parties agree that ValCom is a Delaware corporation. Compl. ¶ 19; Defs.' Mot. to Dismiss at 4. Plaintiff argues that this means that Delaware law governs the claims regarding fiduciary duty. Pl.'s Opp'n to Mot. to Dismiss at 24-25, 28. As noted, Defendants state generally that Florida law governs all of the common law claims because "Valcom is (and was during the relevant time period) located in Florida." Defs.' Mot. to Dismiss at 6.

Restatement § 309 provides that: "The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation . . . except where, with respect to the particular issue, some other state has a more significant relationship . . . to the parties and the transaction." Rst. (2d) Conflicts § 309. The commentary explains that the "other" state's law "is most likely to be applied . . . [if] the corporation does all, or nearly all, of its business and has most of its shareholders in this other

**NOT FOR PUBLICATION**

state and has little contact, apart from the fact of its incorporation, with the state of incorporation." *Id.* cmt. (c).

Florida certainly has "a more significant relationship to the parties and the transaction" than Delaware. Under *Klaxon*, however, this court looks to the choice of law rule of the forum state, and the New Jersey Supreme Court has not adopted § 309.[2] When there is no clear rule from the high court of the forum state, a district court sitting in diversity seeks to divine how that court would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 433 (3d Cir. 2012) (quoting *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

New Jersey courts seem to have coalesced around a rule that courts should generally apply the law of the state of incorporation. *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148, 154 n.1 (Super. Ct. Burl. Cnty. 1985) ("The law of the state of incorporation regulates the internal affairs of a corporation.") (citing *Baldwin v. Berry Automatic Lubricator Corp.*, 132 A. 308, 309 (N.J. Ch. 1926)); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."); *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d. Cir. 2005) (citing *Brotherton* and cursorily applying the law of the state of incorporation); *O'Brien v. Virginia-Carolina Chem. Corp.*, 44 N.J. 25, 39 (1965) (explaining that, as a matter of jurisdiction, "[i]n most situations it is desirable to leave such matters to the

---

[2] At least one state trial court has adopted § 309. *Francis v. United Jersey Bank*, 162 N.J. Super. 355, 368-69 (Super. Ct. 1978) (holding that the exception to the default rule applied).

**NOT FOR PUBLICATION**

courts of the state of creation of the corporation"). In a twist to the § 309 analysis, the exception to the default rule applies in New Jersey not when "some other state has a more significant relationship" but if the dispute affects other parties, such as consumers or employees who are not directors or officers. *Intelent Intern. Corp. v. ITT Corp.*, L-9749-97, 2006 WL 2192030, at *11 (N.J. Super. Ct. App. Div. 2006) (conducting a routine conflicts of law balancing test after finding that "the issue does not pertain to plaintiff's internal affairs *alone*") (emphasis added). Similarly, a 1991 dissenting opinion from the New Jersey Supreme Court examined the issue at length, arguing that the default rule should not apply in a case which involved not only a corporation's internal affairs, but also an individual who suffered physical injury at a New Jersey workplace. *Velasquez v. Franz*, 123 N.J. 498, 528 (1991) (Stein, J., dissenting).

The alleged misconduct reached beyond the internal affairs of ValCom, as the panoply of suits in other jurisdictions makes clear. But the particular cause before this court is purely a suit by a corporation against its former directors and officers (and parties who posed as such). In light of the principle that "only one State should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands," *Edgar*, 457 U.S. at 645, the court will apply Delaware law.

In Delaware, directors and officers of a corporation owe fiduciary duties to the corporation and its shareholders. *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) ("[T]he fiduciary duties of officers are the same as those of directors."). Those duties include a duty of care, a duty of loyalty and a duty of good faith.

The duty of care requires corporate directors to "use that amount of care which ordinarily careful and prudent men would use in similar circumstances, and consider all material information reasonably available in making business decisions." *In re Walt Disney Co.*

**NOT FOR PUBLICATION**

*Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) (citations and quotation marks omitted). But "deficiencies in the directors' process are actionable only if the directors' actions are grossly negligent." *Id*. If a corporate decision was the result of a process which was rational and conducted in good faith, then it is protected from legal attack by the business judgment rule, as explained further below. *Id.*

The duty of loyalty

> "demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers."

*Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939). A fiduciary breaches the duty of loyalty if "he intentionally acts with a purpose other than that of advancing the best interests of the corporation," "with the intent to violate applicable positive law," or by "intentionally fail[ing] to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006). Examples of violations of the duty of loyalty include usurpation of corporate opportunity, *Broz v. Cellular Information Systems, Inc.*, 673 A.2d 148, 154-57 (Del. 1996) (citing *Guth*, 5 A.2d at 509-13), and "the intentional failure or refusal of a director to disclose to the board a defalcation or scheme to defraud the corporation." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 158 (3d Cir. 2010) (quoting *Hoover Industries, Inc. v. Chase*, 1988 WL 73758, at *338 (Del. Ch. 1988)).

Directors also have a duty to act in good faith. *In re Disney*, 907 A.2d at 753-56. This is roughly a duty to "act at all times with an honesty of purpose and in the best interests and welfare of the corporation." *Id.* at 755. A plaintiff can plead bad faith by alleging that the

**NOT FOR PUBLICATION**

defendant acted "with the intent to violate applicable positive law," "fail[ed] to act in the face of a known duty to act," or demonstrated "a conscious disregard for his duties." *Id.* at 755.

Faced with allegations that they violated one or all of these duties, directors of a Delaware corporation benefit from the "business judgment rule," a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Gantler*, 965 A.2d at 706 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). A director or officer who makes a decision which turns out badly is not liable, "so long as the court determines that the process employed was either rational or employed in a *good faith* effort to advance corporate interests." *In re Disney*, 907 A.2d at 750 (citing *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

To survive a motion to dismiss, a plaintiff must plead facts which suggest that it will be able to overcome the presumption of the business judgment rule. Some ways in which a plaintiff may do so include by alleging that a director violated these duties "intentionally, in bad faith, or for personal gain," *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007); by alleging that a decision was "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith," *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del. 1999); or by alleging waste, i.e., that the corporation entered a transaction "on terms so disparate no reasonable person acting in good faith could conclude the transaction was in the corporation's best interest," *Sample v. Morgan*, 914 A.2d 647, 670 (Del. Ch. 2007).

A non-fiduciary may be liable for "aiding and abetting" a fiduciary's breach of duty if she "knowingly participates" in the breach. A plaintiff must allege "(1) a fiduciary relationship;

24

**NOT FOR PUBLICATION**

(2) a breach of that relationship; (3) that the alleged aider and abettor knowingly participated in the fiduciary's breach of duty; and (4) damages proximately caused by the breach." *Gatz v. Ponsoldt*, 925 A.2d 1265, 1275 (Del. 2007) (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)). The knowledge element requires a plaintiff to plead not only that the non-fiduciary knowingly participated in the conduct, but also that she knew the conduct constituted a breach of fiduciary duty. *Malpiede*, 780 A.2d. at 1097.

### a) Counts III and V: Breach of Fiduciary Duties by Mr. and Mrs. Vellardita

Defendants concede that Mr. and Mrs. Vellardita both owed fiduciary duties to ValCom, Defs.' Mot. to Dismiss at 38, and do not move to dismiss these counts.

### b) Count IV: Breach of Fiduciary Duties by Mr. O'Donnell

Plaintiff alleges that Mr. O'Donnell breached his duties to ValCom "by engaging in conduct contrary to the best interests of ValCom" and by failing "to exercise his duties in such capacity with reasonable care, independence and in an informed and deliberate manner in the best interests of the Company and its shareholders." Compl. ¶ 208. Defendants assert that this is only a conclusory allegation. Defs.' Mot. to Dismiss at 36-37.[3] This count incorporates everything that precedes it in the complaint, which more than suffices to make the elements of a fiduciary duty claim. Plaintiff has pled that Mr. O'Donnell violated his duty of care by acting with gross negligence, namely by deliberately circumventing proper corporate process, and that he acted in bad faith "with the intent to violate applicable positive law" or with "a conscious disregard for his duties." *In re Walt Disney*, 907 A.2d at 755. For pleading purposes, these allegations are sufficient to overcome the business judgment rule.

---

[3] Defendants' claim that Mr. O'Donnell was a "mere employee[] of Valcom," Defs.' Mot. to Dismiss at 38, is without merit. It is not disputed that Mr. O'Donnell was a director of ValCom. Directors and officers of a corporation owe identical fiduciary duties to the corporation and its shareholders. *Gantler*, 965 A.2d at 708-09.

NOT FOR PUBLICATION

    **c)  Count VI: Breach of Fiduciary Duty of Loyalty by Ms. Clavijo**

    Plaintiff alleges that Ms. Clavijo "violated the duty of loyalty that she owed to the Company as an employee." Compl. ¶ 218. Defendants rightly point out that there is no such duty. Defs.' Mot. to Dismiss at 38, ECF No. 11-1. This claim is dismissed with prejudice.

**VII.  Count VII (mislabeled Count VI): Breach of Contract**

    Plaintiff says that California law should apply to the contract claim because the contract expressly provides so. Pl.'s Opp'n to Mot. to Dismiss at 8. Defendants assert that, as with all of Plaintiff's state law claims, Florida law governs. Defs.' Mot. to Dismiss Reply at 13, ECF No. 31.

    Under *Klaxon*, the court looks to New Jersey law for the rule regarding a contractual choice of law provision. "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., Inc.*, 158 N.J. 561, 568 (1999) (quoting *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992)). But "New Jersey law will govern if 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice.'" *Id.* (citing Rst. (2d) Conflicts § 187).

    Mr. Vellardita's employment contract with ValCom provides that it "shall be governed by and construed in accordance with the laws of the State of California." Pl.'s Opp'n to Mot. to Dismiss Ex. 1, ECF No. 24, ¶ 13. But the court does not have before it facts sufficient to decide whether the parties or the transaction has any relationship to California or some other reasonable basis for the parties' choice. *See* Rst. (2d) Conflicts § 187. The court does not know where the parties entered or negotiated the contract. *Id.* § 188(2); *see also Arlandson*, 792 F. Supp. 2d at 705  (noting that choice of law is particularly fact intensive for contracts). In light of *Harper*, 595

NOT FOR PUBLICATION

F. Supp. at 491, the court withholds its choice of law determination and decides the motion based on the law of the forum.

In New Jersey, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, A-3172-03T3, 2005 WL 2447776, at *4 (N.J. Super. App. Div. Sept. 22, 2005).

There is no dispute that the contract exists. It required Mr. Vellardita to "devote substantially all of this [sic] attention abilities and energies" to ValCom, to decline to "engage in any activity competitive with or adverse to the Corporation's business or welfare," to "not disclose any . . . trade secrets, directly or indirectly, or use them in any way." Compl. ¶¶ 219-26; Pl.'s Opp'n to Mot. to Dismiss Ex. 1 ¶ 5. Plaintiffs have adequately alleged that Mr. Vellardita violated each of these provisions and that ValCom suffered damages as a result. This claim survives.

VIII.   **Count VIII (mislabeled Count VII): Breach of the covenant of good faith and fair dealing**

Plaintiff alleges that Mr. Vellardita, through the conduct alleged in the complaint, "breached the covenant of good faith and fair dealing implied in every contract." Compl. ¶¶ 227-30. Defendants argue that this is insufficient because the complaint "fails to inform the Court what specific section of Vincent's contract was breached." Defs.' Mot. to Dismiss Reply at 14. Because this claim springs from Mr. Vellardita's employment contract, the court again finds the facts insufficient to resolve the choice of law question and applies New Jersey law for purposes of this motion.

All contracts in New Jersey are subject to the implied covenant of good faith and fair dealing, including employment contracts. *Bonczek v. Carter Wallace, Inc.*, 304 N.J. Super. 593,

NOT FOR PUBLICATION

599 (App. Div. 1997). The courts typically recognize this right of action in three scenarios, but only one is plausibly applicable here: "to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations." *Berlin Med. Assocs., P.A. v. CMI New Jersey Operating Corp.*, A-3034-04T5, 2006 WL 2162435, at *9 (N.J. Super. Ct. App. Div. Aug. 3, 2006).

Plaintiff has not indicated that it is entitled to any relief under this claim not adequately covered by its claims for breach of contract, breach of fiduciary duty, and others. Absent a showing that this claim is not duplicative of others in the complaint, it has no place in this action. *See Berlin Med. Assocs.*, 2006 WL 2162435, at *10 ("[P]laintiffs' invocation of the implied covenant of good faith and fair dealing appears to be redundant."). This claim is dismissed with prejudice.

### IX.  Count IX (mislabeled Count VIII): Civil Conspiracy

Plaintiff alleges that the Defendants conspired together "to defraud ValCom, divert corporate opportunities and assets of the Company, or other wrongful conduct with the intent and/or effect of dissipating Company assets for financial gain." Compl. ¶ 233. Defendants argue that this allegation fails to identify which Defendants engaged in this alleged conspiracy. Defs.' Mot. to Dismiss at 35.

Defendants suggest that, as with all other common law claims, Florida law applies. Defs.' Mot. Dis at 35. New Jersey and Florida are the potential sources of law. There is no conflict between New Jersey and Florida law.

Recently, a Florida appellate court stated the elements of a claim for civil conspiracy this way: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Olesen v. Gen.*

28

NOT FOR PUBLICATION

*Elec. Capital Corp.*, 5D12-297, 2014 WL 470732, at *8 (Fla. Dist. Ct. App. Feb. 7, 2014). In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular*, 184 N.J. at 177 (2005) (citation omitted).

In both states, a claim for civil conspiracy is not an independent cause of action, but rather is a derivative claim regarding an underlying substantive tort, and can only be adequately pled if the underlying claim is adequately pled as well. *See, e.g.*, *Rushing v. Bosse*, 652 So. 2d 869, 875 (Fla. Dist. Ct. App. 1995), *Repetti v. Vitale*, L-508-08, 2011 WL 3962518, at *3-5, (N.J. Super. A.D. 2011) (citing *Banco Popular*); *see also American Corporate Soc. v. Valley Forge Ins. Co.*, 424 Fed. App'x 86, 90 (3d. Cir. 2011) (citing *Banco Popular*).

As said, the pleading standards of these laws do not conflict and the court applies the law of the forum state, New Jersey. Plaintiff has alleged that Mr. Vellardita, Mrs. Vellardita, Mr. O'Donnell, Ms. Clavijo, the Rathods, BEI and various unnamed others acted in concert to commit various unlawful acts, including defrauding ValCom. Compl. ¶ 233. The Complaint contains a litany of overt acts, including the signing of various fraudulent Board resolutions, in furtherance of various underlying wrongs, including common law fraud, which damaged the company. This claim survives.

## X.   Count X (mislabeled Count IX): Negligence

Plaintiff alleges, "[i]n the alternative," that all of the Defendants except Ms. Clavijo are liable to ValCom for negligence, stating simply that they "were negligent in connection with their conduct as set forth herein." Compl. ¶ 235-37. Defendants rightly point out that this is a conclusory allegation which fails even to rise to the level of notice pleading under the pre-*Twombly*/*Iqbal* Rule 8 standard, because it does not state the elements of a claim for negligence.

NOT FOR PUBLICATION

Defs.' Mot. to Dismiss at 29. In particular, it fails to identify what duty the Defendants owed to Plaintiff and thus fails to explain why this claim is not duplicative of the claims for breach of fiduciary duty.

These claims are dismissed without prejudice.

**XI.   Count XI (mislabeled Count X): Tortious Interference with Prospective Economic Advantage**

In their final substantive allegation, Plaintiff contends that Mr. and Mrs. Vellardita "tortiously interfered with ValCom's prospective economic advantage through fraud and other improper means," including through the companies Classic Country and BEI. Compl. ¶¶ 238-41. This relates primarily to agreements Classic Country entered with companies called Gabriel Communication, Inc., and Luken Communications, LLC. *Id.* ¶¶ 152-171. Defendants claim that they cannot be liable for this alleged infraction because Plaintiff "fails to cite to one interaction the Company had with Luken." Defs.' Mot. to Dismiss at 33.

This claim appears to rely on a complex underlying pattern of facts, involving New Jersey, Florida and Tennessee. Mr. and Mrs. Vellardita lived in Florida and ValCom was based there, but the corporate opportunity they allegedly interfered with was in Tennessee and involved a ValCom warehouse located in New Jersey. Compl. ¶¶ 152-171. For that reason, the court does not yet have sufficient facts to determine the choice of law for this claim, and will apply the law of the forum state solely for the purpose of this motion to dismiss.

In New Jersey, a plaintiff claiming tortious interference "must show (1) intentional or malicious interference 'with a prospective or existing economic or contractual relationship with a third party,' (2) that the interference caused a loss of prospective gain, and (3) damages." *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 305 (D.N.J. 2007) (citing *Cox v. Simon*, 278 N.J. Super. 419 (App. Div. 1995)). A plaintiff must show "that it had a reasonable expectation of economic

NOT FOR PUBLICATION

advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby." *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 305-06 (2001) (citing *Baldasarre v. Butler*, 132 N.J. 278, 293 (1993)). The causation element requires a plaintiff to demonstrate "that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit." *Id.* (citation omitted). This claim typically arises in the context of interference by a third party, rather than an employee. But if an "employee or agent is acting outside the scope of his or her employment or agency, then an action for tortious interference will lie." *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 568 (App. Div. 2001) *aff'd*, 172 N.J. 182 (2002) (describing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752 (1989) and its progeny). An employee acts outside the scope of his employment if he "acts for personal motives, out of malice, beyond his authority, or otherwise not 'in good faith in the corporate interest.'" *Id.* at 569 (quoting *Varallo v. Hammond Inc.*, 94 F.3d 542, 849 n.11 (3d Cir. 1996)).

Defendants say this claim falls short because ValCom had no reasonable expectation of doing business with Luken because it never even had any contacts with that company. Defs.' Mot. to Dismiss at 33-34. But, as Plaintiff has made clear, this is only true to the extent that Mr. Vellardita, while he should have been pursuing economic opportunities for ValCom, was instead looking out for himself and other entities in which he had an interest. Plaintiff has thus adequately plead that Mr. Vellardita acted outside the scope of his employment and that he and Mrs. Vellardita tortiously interfered with ValCom's prospective economic advantage, so this claim survives.

## XII. Count XII (mislabeled Count XI): Punitive and Exemplary Damages

Finally, Plaintiff asserts that, because Defendants' conduct "was undertaken maliciously, willfully and wantonly," ValCom is entitled to punitive and exemplary damages. Compl. ¶¶ 242-

**NOT FOR PUBLICATION**

44. Defendants insist that this claim is premature and must be dismissed. Defs.' Mot. to Dismiss at 36.

The court does not yet have any reason to decide which law governs a potential award of punitive damages. It suffices to say that, under New Jersey law, "[a]n award of punitive damages must be specifically prayed for in the complaint." N.J. Stat. Ann. § 2A:15-5.11 (West 2013). Both New Jersey and Florida allow such an award only after a showing, by clear and convincing evidence, that the defendant was sufficiently culpable, though these standards of culpability differ. In Florida, it can be "intentional misconduct or gross negligence," F.S.A. § 768.72 (West 2013), but in New Jersey it must be "actual malice" or "wanton and willful disregard," and the statute explicitly provides that "[t]his burden of proof may not be satisfied by proof of any degree of negligence including gross negligence," N.J.S.A. § 2A:15-5.12 (West 2013).

It is properly in the complaint and requires no further discussion at this time.

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's motion to amend, ECF No. 23, is denied because it does not contain a draft amended complaint. An Order accompanies this opinion.


Date:   April 23, 2014


                                        **s/ William H. Walls**
                                        United States Senior District Judge